## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| BEVERLY STAYART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 09-C-0116 |
| v. | ) | |
| | ) | |
| YAHOO! INC., a Delaware corporation; | ) | |
| | ) | |
| OVERTURE SERVICES, INC., d/b/a | ) | |
| ALTA VISTA, a Delaware corporation; and | ) | |
| | ) | |
| VARIOUS, INC., d/b/a FRIENDFINDER.COM, | ) | |
| a California Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT YAHOO! INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO DISMISS COUNTS I-VI OF PLAINTIFF'S COMPLAINT

Defendants Yahoo! Inc. and Overture Services, Inc. (collectively hereinafter, "Yahoo!"),[1]

submit this memorandum of law in support of their motion for judgment on the pleadings

pursuant to Rule 12(c), or alternatively, to dismiss for failure to state a claim pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, and ask this court to dismiss counts I, II, III,

IV, V, and VI of Plaintiff's complaint.[2]

---

[1] Plaintiff names both Yahoo! and Overture Services, Inc. as defendants, with identical claims against each (Counts I-III against Yahoo!, Counts IV-VI against Overture). As the Complaint acknowledges, Overture Services, Inc. operated under Yahoo!'s control during the relevant period and has now been fully subsumed into Yahoo!, and is no longer a separate entity from Yahoo! Inc. As such, Yahoo! addresses all six of the Counts herein.
[2] Prior to filing this action, Stayart filed a pre-litigation discovery petition against Yahoo! in Illinois Circuit Court seeking information from Yahoo! about the publishers of substantially the same content at issue here. *Stayart v. Yahoo! Inc. and Overture Svcs., Inc.*, No. 08 L 11519 (Ill.

**<u>INTRODUCTION</u>**

Over the last decade, the Internet and related online services have spawned a communications revolution.  Interactive computer services have expanded by orders of magnitude the means by which individuals can locate and share information and communicate with one another, and in the process have spurned enormous economic growth.  As Plaintiff's complaint recognizes, Yahoo! has been one of the leaders of this revolution, providing interactive computer services, including the Internet's second largest search engine, to over 500 million users worldwide.  (Plaintiff's Complaint ("Compl."), ¶ 24).  Yahoo!'s search engine allows users to input search terms for information they seek on the Internet and then retrieve listings of relevant websites corresponding to those terms.  (Compl. ¶ 28).

During the advent of this online revolution, Congress made a considered choice to promote the continued development of interactive computer services and vibrant online speech. Congress recognized that these services are designed to carry and display a vast amount of information that originates with third parties and is disseminated nearly instantaneously.  Given this reality, Congress determined that the risk of liability arising from third-party communications and content would significantly diminish the incentives and ability of providers to offer these critical services.  Accordingly, Congress passed the Communications Decency Act ("CDA"), 47 U.S.C. § 230, to immunize providers like Yahoo! from liability for communications originating from third parties.  Over the last decade courts, including the Seventh Circuit Court of Appeals, have consistently recognized and enforced the CDA's broad protection for interactive computer services where they do not create the content at issue.

In the present action, plaintiff Beverly Stayart's ("Stayart" or "Plaintiff") allegations take

---

Cir. Ct., Cook County Division, dismissed Feb. 18, 2009).  Stayart's petition was dismissed after Yahoo! verified its inability to access or provide such information, as it lacked any relationship with the third-party sites at issue.

aim at the very services and functionality Congress sought to protect, and seek to impose liability in the precise context in which Congress foreclosed it. Plaintiff alleges that Yahoo! "used," "linked," or "connected" Plaintiff's name to certain third-party websites. (Compl. ¶¶ 128, 137, 142, 146, 153, 160, 171, 178). Plaintiff does not claim, however, that Yahoo! itself originated any of the allegedly harmful communications. Rather, as the complaint makes clear, Plaintiff objects to Yahoo!'s inclusion and display of small portions of these third-party communications in its search results, and seeks to hold Yahoo! liable for performing its role as a search engine. This claim cannot stand. Both Congress and the Courts have spoken unequivocally on this issue and held that Section 230 of the CDA provides interactive computer service providers like Yahoo! immunity from such claims.[3]

## LEGAL STANDARD

On a motion to dismiss or for judgment on the pleadings, the court "must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs." *Hinnen v. Kelly*, 992 F.2d 140, 142 (7th Cir. 1993) (affirming dismissal where defendant had immunity from liability). The federal rules require, however, that a complaint allege facts that would provide an adequate basis for a claim, if proven, and the court is not required to ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

---

[3] In addition to being foreclosed by Section 230, Plaintiff also fails to allege certain facts necessary to support her claims under the Lanham Act and for statutory and common law invasion of privacy. *See* Argument Section IV.A-B, *infra*.

# PLAINTIFF'S ALLEGATIONS

## I.    The Nature of Plaintiff's Claims

On February 5, 2009, Plaintiff Beverly Stayart filed this action against Yahoo! based on its operation of internet search engines available at http://www.yahoo.com and http://www.altavista.com.  Both search engines allow users to type a word or phrase into a search box and in return generate results linking to web pages containing the search terms.  (Compl. ¶¶ 28-29).

Plaintiff's factual allegations fall into two categories.  First, she alleges that she conducted searches on Yahoo! and Alta Vista using the terms "Bev Stayart," and that some of the results generated by those searches displayed the search terms -- her name -- along with other text from third party websites containing references to prescription drugs.  (Compl. ¶¶ 71, 84.) Second, she alleges that, after clicking on some hyperlinks contained in those search results, her browser was forwarded or redirected to sites *not identified in the search results* that displayed her name in conjunction with pornographic images.  (Compl. ¶¶ 68-70, 72-74.)  With regard to the former, she alleges that the display of her name with the drugs in question within the search results caused her harm, though she acknowledges the prescription drug content originated from third-party websites and that she contributed her name as the search query.  With regard to the latter, she alleges only that the appearance of her name with the pornographic images on the third-party sites caused her harm, and not that her name or the offending images appeared within the search results on Yahoo!.

Rather than identifying the publishers of the websites containing the content to which she took issue and demanding the removal of the content by those publishers, Stayart instead filed suit against Yahoo!, bringing claims for false designation of origin (Counts I and IV), and violation of Wisconsin statutory (Counts II and V) and common law (Counts III and VI) right of

privacy.  Notably, Plaintiff nowhere alleges that any person at Yahoo! authored any of the content about which she complains.  Instead, she argues that Yahoo! should be held responsible for the content of third-party websites that appears in its search results or, even more incredibly, that Yahoo! should be liable for content appearing only on those websites and which *never appeared in Yahoo! search results*.

## II.    The Third-Party Content Of Which Plaintiff Complains

Plaintiff alleges that when she typed the search term "Bev Stayart" into the Yahoo! search engine on September 9, 2008, she received a search result titled "Pm 10kb Loading Cialis – Online Pharmacy."  (Compl. ¶ 60.)  The search result, in standard Yahoo! fashion, displayed the title of the page, an abstract containing words appearing on the page,[4] and the Uniform Record Locator ("URL") where the page was found.  As indicated in the Complaint and in Plaintiff's Exhibit C, the URL for this link was http://chitosan-as-a-pharmaceutical-excipient.pills-n-health.cn/.  The words "bev stayart" appeared in the abstract.

Plaintiff also alleges that, when clicking the title of the search result, which serves as a hypertext link to that third-party website, she was redirected or "forwarded" to a number of websites displaying pornography, including www.mysharedvideo.com, www.gothotvidtosee.com, www.videosfreefresh.com, www.videofreeforonline.com, www.myprivatetube.com, and www.freeprivatetube.com.  (Compl. ¶¶ 62, 66, 68-70, 72-74.)  Again, plaintiff does not allege that Yahoo! owns, operates, or publishes any of these sites.  None of these URLs appear in any of the Yahoo! search results Plaintiff identifies in her complaint, nor in the exhibits displaying Yahoo! search results to which her complaint refers.

Plaintiff also alleges that, upon clicking the URL appearing in the "Pm 10kb Loading

---

[4] Plaintiff describes this text as a "snippet" (Compl. ¶ 37), which is slightly deceiving – the abstract does not constitute a single segment of the page, but multiple samples of text that may appear in various places on the third-party website, each of which is separated from the others in the abstract by ellipses.  See Compl. ¶ 60.

Cialis" search result on both the Yahoo! and Alta Vista search engines, the linked page displayed her name in conjunction with prescription drugs Levitra, Cialis, and Viagra. (Compl. ¶¶ 71, 84, 86, 91.) Again, Plaintiff does not allege that Yahoo! owns, operates, or publishes the linked pages, or that Yahoo! markets or distributes these drugs.[5] In short, in every instance the content to which Plaintiff objects was published by a third party. Yahoo! did not author the content, and in most instances, did not even directly link to it.

## ARGUMENT

Counts I through VI of Plaintiff's Complaint are subject to dismissal on two grounds. First, each of Plaintiff's claims is barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Plaintiff seeks to treat Yahoo! as the publisher of content generated by other information content providers – namely, the publishers of the websites containing the content giving rise to her complaint. Thus, each of the Counts against Yahoo! is barred under the CDA.[6] Second, even absent the CDA, these Counts nevertheless fail, because Plaintiff fails to allege sufficient facts to establish each claim as a matter of law.

---

[5] Plaintiff also alleges that text appearing in an Alta Vista search result did not accurately reflect a posting she made on the linked page. (Compl. ¶ 95.) This allegation does not appear to provide a basis for any of Plaintiff's claims, but in fact, the exact text of the first two portions of the abstract appears on the pages she attaches as Exhibit W. Although the third portion ("Buy evista cialis viagra levitra hydrocone pictures") does not appear in the Exhibit, the Exhibit contains only a portion of the printed web page. *See* Exhibit W (the two pages of this Exhibit are notated "Page 1 of 10" and "Page 7 of 10" in the top righthand corner, and display user comments numbered 28-32 without displaying the other comments).

[6] The Seventh Circuit has established that claims barred by the CDA are appropriately adjudicated in response to a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *Chicago Lawyer's Committee v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008) (affirming district court's judgment on the pleadings). Thus, Yahoo! asserts this defense pursuant to Rule 12(c), while pursuing its non-CDA arguments under Rule 12(b)(6).

**III.     Section 230 of the Communications Decency Act Bars Plaintiff's Claims.**

**A.     Section 230 is Designed to Insulate Interactive Computer Services from Liability for Third-Party Content.**

All three of Plaintiff's causes of action – the federal Lanham Act claim, the Wisconsin statutory claim, and the common law claim – are barred under Section 230(c)(1) of the CDA. Congress passed the immunity provision in 1996 "for two basic policy reasons: to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). "In light of these concerns, reviewing courts have treated § 230(c) immunity as quite robust[.]" *Id.* at 1123. In determining that because the plain language of Section 230(c)(1) "creates a federal immunity to *any cause of action* that would make service providers liable for *information originating with a third-party user of the service*," an internet service was immune from both publishing third-party content and delaying in removal of the content, the Fourth Circuit stated:

> Congress made a policy choice ... not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages. Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran v. America Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997). The Fourth and Ninth Circuits have been joined by the First, Tenth and most importantly, the Seventh Circuit in

recognizing Section 230's broad protection.[7]  *See Craigslist, Inc.*, 519 F.3d at 672; *Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.*, 206 F.3d 980, (10th Cir. 2000), *certiorari denied* 121 S.Ct. 69, 531 U.S. 824, 148 L.Ed.2d 33; *Universal Comm. Sys., Inc. v. Lycos, Inc.* 478 F.3d 413 (1st Cir. 2007).  As discussed below, Yahoo!'s services are exactly the kind Congress enacted the CDA to protect, and Plaintiff's claims fall directly within the CDA's immunity provisions. *Kruska v. Perverted Justice Foundation Inc.*, 2008 WL 2705377 at *4 (D. Ariz. 2008) (dismissing § 43(a) Lanham Act claim because of domain registrar's CDA immunity); *Carafano*, 339 F.3d at 1125 (finding CDA immunity for website against claims of misappropriation of right of publicity and invasion of privacy).[8]

> **B.  Yahoo! Is an "Interactive Computer Service" and the Content at Issue was "Provided By Another Content Provider."**

Section 230(c)(1) of the CDA provides that "[N]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  An interactive computer service ("ICS") is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet…."  47 U.S.C. § 230(f)(2).  An

---

[7] Moreover, in passing the "Dot Kids Implementation and Efficiency Act," Congress explicitly endorsed this body of law.  *See* 47 U.S.C. § 941 (extending protections of Section 230 to certain entities); H.R. Rep. No. 107-449, at 13 (2002) ("[t]he courts have *correctly interpreted* section 230(c)" and "[t]he Committee intends these interpretations of Section 230(c) to be equally applicable to those entities covered by" the Dot Kids Act).

[8] Although the CDA provides that it has no effect on intellectual property law, 47 U.S.C. § 230 (c)(2)(e), courts have declined to apply the intellectual property exception to false endorsement claims under the Lanham Act, as well as to state law privacy and right of publicity claims.  *See Kruska*, 2008 WL 2705377 at *3 ("claim that Section 43(a) of the Lanham Act defeats the immunity provision in the CDA has no support in statute or case law"); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) ("permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes").

"information content provider," by contrast, is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, Plaintiff's own allegations clearly establish that Yahoo! is an ICS,[9] and courts have recognized that the definition of ICS includes search engines like Yahoo!. *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) (search engine Ask.com is an ICS).

Likewise, the content about which Plaintiff complains plainly constitutes "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Throughout her complaint, Plaintiff describes content displayed on third-party websites to which Yahoo! at most merely links or displays portions of the site's text in Yahoo!'s search results (and for the pornography sites, alleges no direct connection to Yahoo! at all). Plaintiff nowhere alleges, however, that Yahoo! is the provider of the allegedly actionable content.

First, much of the content to which Plaintiff objects is found wholly outside the Yahoo! service.

- o "[S]he then clicked the search engine result…. When she did so, her name 'Bev Stayart' appeared on the website…. The website was www.mysharedvideo.com." (Compl. ¶ 62.)

- o "When she clicked this link, the same darkened movie screen with her name 'Bev Stayart' centered at the top appeared. This time, the website on which the movie played was www.gothotvidtosee.com." (Compl. ¶ 66.)

- o "When she clicked this link, the website www.videosfreefresh.com appeared. The same darkened movie screen with her name 'Bev Stayart' centered at the top and the invitation to 'Play Free Movie!' appeared." (Compl. ¶ 68.)

- o "When she clicked the link, she entered the website www.freeprivatetube.com. The same darkened movie screen with her name 'Bev Stayart' centered at the top appeared." (Compl. ¶ 69.)

---

[9] Compl. ¶ 24 ("Yahoo provides Internet functions and services to individuals and companies, with more than 500 million users worldwide… [a]mong other services, Yahoo provides a commercial search engine"); ¶ 26 ("Yahoo and its affiliates, such as Overture, provide Internet functions and services to all fifty states within the United States, including Wisconsin.").

The common attribute in each of these allegations is that the allegedly harmful content is not only provided exclusively by third parties, but *displayed exclusively* on third-party sites.[10]  Thus, for these sites Plaintiff does not even allege that Yahoo! displays the objectionable content on its site, much less that it created the content.

Plaintiff also refers to abstracts appearing in search results on the Yahoo! and Alta Vista websites that include the words "bev stayart" amidst other allegedly objectionable content:

> o  "One of the results found on Yahoo!'s search engine (see, Exhibit C) stated:
>
> Pm10 kb Loading Cialis – Online Pharmacy
> Pm 10kb loading cialis January th, at: pm hi friends i met you in
> the tim horton s on bloor st a few Sundays ago I . . . on February
> bev stayart on march th . . . chitosan-as-a-pharmaceutical-
> excipient.pills-n-health.cn/ . . ." (Compl. ¶ 60.)
>
> o  "The following search engine result appeared:
>
> Pm 10kb Loading Cialis – Online Pharmacy
> . . . seal of approval posted on february bev stayart on march th pm
> with k-dur medrol . . . Generic name for levitra cialis pictures
> results generic Viagra lowest . . . chitosan-as-a-pharmaceutical-
> excipient.pills-n-health.cn/" (Compl. ¶ 78.)

As Plaintiff's own description of Yahoo!'s functionality makes clear, however, the content of these search result abstracts is provided by another information content provider (the linked website).  (Compl. ¶ 38 ("The search result also includes a 'link' (an embedded electronic address) to the page on the web from which the 'snippet' language is found.").)  Hence, Plaintiff's complaint alleges merely that in the course of providing its interactive computer service, Yahoo! displayed portions of content provided by third-party information content providers (the sites generated by Plaintiff's search query).  Accordingly, Plaintiff's claim falls squarely into the class of claims barred by Section 230(c)(1).

---

[10] Yahoo! does not even include links to these sites, as Plaintiff's allegations acknowledge they were accessed only after the initial site to which Yahoo! linked redirected the Plaintiff to yet another site.  (*See, e.g.*, Compl. ¶ 70.)

In *Murawski*, the Southern District of New York was faced with a near identical set of allegations, where a plaintiff complained that the search engine Ask.com displayed search results that included content from a third-party website associating his name with the Communist Party. *Murawski*, 514 F. Supp. 2d at 590-91. After concluding that the search engine was certainly an ICS, the court held:

> "It is equally clear that the text displayed from [the linked site] when plaintiff ran a search for his name on Ask.com was 'information provided by another information content provider,' specifically the [linked] website. **Accordingly, Ask.com cannot be held liable for any statements made on [the linked site], including information that appears as a result of a search query of plaintiff's name.**"

*Id.* at 591 (emphasis added). Here, as in *Murawski*, Plaintiff searched on her name, found search results she found objectionable, and subsequently visited sites containing other objectionable content. Just as in *Murawski*, all of that content was "provided by another information content provider," and the search engine linking to it is immunized under the CDA.

Finally, as the Seventh Circuit made clear in its recent *Craigslist* decision, Plaintiff's attempt to hold Yahoo! accountable for this third-party content is precisely what the CDA bars. In that case, Judge Easterbrook, in addressing the plaintiff's claim that defendant Craigslist "caused" allegedly discriminating posts to appear online by maintaining its online forum, stated that "an interactive computer service 'causes' postings only in the sense of providing a place where people can post" and concluded that "given § 230(c)(1), [plaintiff] cannot sue the messenger just because the message reveals a third party's plan to engage in unlawful discrimination." *Craigslist*, 519 F.3d at 671-72. Similarly, Yahoo! only "caused" the publication of the content Plaintiff deems harmful here in the sense of providing a search engine through which Plaintiff found the third-party sites. And, as in *Craigslist*, Section 230(c)(1) does not permit Plaintiff to sue the messenger just because its search results may reveal a third party's

association of Plaintiff with objectionable material.

**IV.    Plaintiff's Allegations Fail to State Cognizable Claims Even Absent CDA Immunity.**

Yahoo!'s CDA immunity notwithstanding, Plaintiff's claims nonetheless still fail as a matter of law, as the facts alleged fall short of those necessary to sustain her Lanham Act and invasion of privacy claims against Yahoo!.  Plaintiff's Lanham Act claim fails because she does not allege that Yahoo! used her name in conjunction with Yahoo!'s own products and services, as required by Section 43(a)(1)(A) of the Act.  To the extent her claim can be read as a false advertising claim, she cannot assert competitive harm.  Plaintiff's state law claims similarly fail because she does not allege that Yahoo! used her name for advertising purposes, or that her name has commercial value in conjunction with the prescription drugs or pornography sites to which she claims her name has been linked.

**A.    Plaintiff Fails to State a Claim under Section 43(a) of the Lanham Act.**

Section 43(a) of the Lanham Act provides as follows:

> "(a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of *his or her goods*, *services*, or *commercial activities* by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."[11]

---

[11] 15 U.S.C. § 1125(a) (emphasis added).

Plaintiff does not identify whether her claims arise under subsection (A) or subsection (B), but regardless, her allegations fail as a matter of law.

First, Plaintiff cannot establish a claim under subsection (a)(1)(A) because she fails to allege that Yahoo! used her name in conjunction with **Yahoo!'s** goods, services, or commercial activities. Section 43(a)(1)(A) requires that a defendant's misrepresentations or misappropriation pertain to the "origin, sponsorship, or approval of *his or her* goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(A) (emphasis added). Here, Plaintiff alleges that Yahoo! and Overture used her name to falsely represent that she endorses or is affiliated with the prescription drug Cialis, and with six pornographic websites. (Compl. ¶¶ 130-32, 135-140, 160-64.) She also alleges that Overture falsely linked her with the prescription drugs Viagra and Levitra. (Compl. ¶ 167.) She does not, however, allege that Yahoo! or Overture own or operate the pornographic websites she visited, or even that those websites appeared in Yahoo! search results. Moreover, she specifically alleges that Cialis, Levitra, and Viagra are marketed and distributed by other parties. (Compl. ¶¶ 77, 81, 89.) In the absence of an allegation that Yahoo! misrepresented Plaintiff's endorsement of or affiliation with Yahoo!'s own goods, services, or commercial activities, Plaintiff's claim under subsection (A) fails. *Heartbrand Beef, Inc. v. Lobel's of New York LLC*, 2009 WL 311087 (S.D. Tex. 2009) (dismissing Lanham Act claim for failure to allege that Yahoo! search results promoted Yahoo!'s own products or services).

Second, to the extent Plaintiff's claims can be read as false advertising claims under subsection (a)(1)(B), they fail as a matter of law because she cannot assert competitive harm. *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) (plaintiff had no standing to bring false advertising claim where it was not a competitor with defendant). Here, Plaintiff does not allege she is a competitor of prescription drug manufacturers

or distributors, providers of pornography content, or internet search engines like Yahoo! and Alta Vista, and thus has no standing under subsection (B).

For the reasons set forth above, this Court should dismiss Counts I and IV of Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

### B.    Plaintiff's State and Common Law Privacy Claims Also Fail.

Plaintiff also fails as a matter of law to establish a claim against Yahoo! under either Wisconsin's right of privacy statute or common law right of privacy.  These claims fail for two essential reasons:  (i) Yahoo! did not advertise using Stayart's name; and (ii) Stayart's name has no commercial value.

Plaintiff asserts a violation of Wis. Stat. § 995.50 for invasion of her right to "control the use of her name with respect to commercial endorsement and right to privacy."  (Compl. ¶¶ 145, 170.)  Accordingly, Plaintiff's claim appears to allege a violation of Wis. Stat. § 995.50(2)(c), which prohibits "[t]he use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian."  Similarly, with respect to her common law "right of privacy" claim, Plaintiff alleges that she "possesses the inherent right at common law to control the use of her name with respect to commercial endorsement and right of privacy."  (Compl. ¶¶ 152, 177.)  This language comports with a common law misappropriation claim, for which the Wisconsin Supreme Court has established the following elements: (i) Plaintiff's name was used for advertising purposes without her permission; (ii) the name used identifies her; and (iii) she suffered damages based on the misappropriation or that the defendant was unjustly enriched.  *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 403 (1979).  Both Plaintiff's statutory and common law privacy claims suffer the same fatal deficiencies.

First, Plaintiff fails to allege that *Yahoo!* used her name for advertising purposes.

Plaintiff does not allege that Yahoo! operates the pornographic websites, or that Yahoo! manufactures or markets the prescription drugs advertised on the objectionable websites. Nor does she allege that the pornographic websites she describes even appeared in the Yahoo! search results. Yahoo!'s publishing of search results for linked websites that contain a reference to Plaintiff does not constitute advertising by Yahoo!. To the extent that the Plaintiff takes issue with the words "Bev Stayart" appearing on a website not owned or operated by Yahoo!, her case is properly pled against the owner or operator of that site, not Yahoo!. *Hagen v. Dahmer*, 1995 WL 822644 at *5 n.4 (E.D. Wisc. 1995) ("incidental use of a name is insufficient" to violate statutory right of publicity).

Second, Plaintiff cannot establish damages because she fails to allege that her identity has commercial value in the context of the goods or services to which she alleges she has been falsely associated. "The right of publicity is designed to reserve to a celebrity the personal right to exploit the commercial value of his own identity." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000). The Third Circuit has held that the key component of the right of publicity is the value of an association between the product or service being sold and the plaintiff's identity. *McFarland v. Miller*, 14 F.3d 912, 919 (3rd Cir. 1994). Plaintiff does not allege that she has ever reaped any financial gain from the value of her endorsement. *Hirsch*, 90 Wis. 2d at 397 (prior payment for use of plaintiff's name constitutes evidence of commercial value). Plaintiff's two Danish poems and humanitarian web postings notwithstanding, she does not (and cannot) allege that her name has any value when associated with the sale or distribution of erectile dysfunction drugs or pornographic materials. *Landham*, 227 F.3d at 624 (to succeed on right of publicity claim, Plaintiff "must show that a merchant would gain significant commercial value by associating an article of commerce with [her]").

Because Plaintiff fails to state a claim regarding her state and common law invasion of

- 15 -

privacy claims, Yahoo! requests that the court dismiss Counts II, III, V, and VI of her Complaint.

**C.     The Claims Should Be Dismissed With Prejudice.**

Should the court dispose of Counts I-VI in response to the motion to dismiss rather than after judgment on the pleadings, the claims should be dismissed with prejudice because amended pleadings will likewise fail to state a claim.  Under Seventh Circuit law, leave to amend is granted only when amended pleadings "could cure the deficiency in the complaint."  *Asher v. Harrington*, 461 F.2d 890, 895 (7th Cir. 1972).  Here, Plaintiff cannot make Yahoo! the publisher of content not appearing on its sites, the marketer or distributor of the products available on third-party sites, or the advertiser of products it does not sell.  No amount of artful pleading can overcome these basic infirmities in Plaintiff's claims.  "To hold otherwise would impose upon the defendants and the courts the arduous task of responding to an obviously futile gesture on the part of the plaintiffs."  *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991) (denying leave to amend where amendment could not cure deficiencies in claims).

**CONCLUSION**

For the foregoing reasons, Yahoo! respectfully requests that this Court grant Yahoo! judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) for Counts I, II, III, IV, V, and VI of Plaintiff's complaint, or alternatively, that the Court dismiss the aforementioned Counts with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: April 6, 2009          Respectfully submitted,


                              By:    /s/ Christian S. Genetski
                                     Attorney for Defendants Yahoo! Inc. and
                                     Overture Services, Inc.

Christian S. Genetski
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street NW, Suite 600, East Tower
Washington, DC 20005
202.408.6400
202.408.6399 (Facsimile)
Email: cgenetski@sonnenschein.com

David Tonisson
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
312.876.8000
312.876.7934 (Facsimile)
Email: dtonisson@sonnenschein.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 6, 2009, I electronically filed the preceding DEFENDANT YAHOO! INC.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO DISMISS COUNTS I-VI OF PLAINTIFF'S COMPLAINT with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to:

| | |
|---|---|
| **Gregory A. Stayart**<br>72wk96@elknet.net | **John F. Hovel**<br>jfh@kravitlaw.com<br>**Melissa S. Blair**<br>msb@kravitlaw.com<br>**Stephen E. Kravit**<br>kravit@kravitlaw.com |

/s/ David Tonisson