UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

BEVERLY STAYART,

                        Plaintiff,                                      Case No. 09-C-0116

v.

YAHOO! INC.,
OVERTURE SERVICES, INC., d/b/a
ALTA VISTA and VARIOUS, INC.,
d/b/a FRIENDFINDER.COM,

                        Defendants.

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

Defendant Various, Inc. ("Various" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss the complaint (the "Complaint") of plaintiff Beverly Stayart ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).

### Introduction

Defendant, an Internet provider of on-line personal advertising and social networking web sites, moves to dismiss Plaintiff's Complaint and each of her claims against Defendant for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). It is evident from the face of the Complaint that the circumstances which appear to have distressed Plaintiff were not caused by Defendant's actions. As a result, for each of her claims, the facts alleged by Plaintiff are insufficient to support a finding of multiple required elements. Certainly the Complaint has failed to state facts making it *plausible* that Plaintiff is entitled to relief. *Bell*

*Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1959 (2007). This case should be dismissed with prejudice on the grounds of Plaintiff having failed to state a claim.

## Summary of Complaint

On September 9, 2008, Plaintiff made the first of a series of web searches based on the search term "Bev Stayart." ¶ 59.[1] Seven search engine results were displayed as a result. ¶ 61. Six of the results "correctly" referred to Plaintiff "and were recognizable to her." *Id.* One of the search results appeared to be a website purporting to sell Cialis, a drug used to treat erectile dysfunction, and also contained the term "bev stayart." ¶ 60; ¶ 77. Plaintiff describes this as "a fraudulent and illegitimate website." ¶ 60. Plaintiff then clicked on the search engine result, which led her to a web page with her search term, "Bev Stayart," centered at the top with a video screen which flashed "Watch Free Movie!" and sought to induce her to download some dubious software, which her virus protection software warned her not to do. ¶¶ 62-64. Plaintiff never alleges that this website belonged to or was in any way controlled by Defendant. Numerous times over the succeeding three months, Plaintiff repeated these almost precisely identical actions with almost precisely identical results. ¶¶ 66-111.

On December 5, 2008, Plaintiff typed into her browser the following link, "http://jewellery.makin.doorway.orge.pl/bev-stayart.html." ¶ 115. A website appeared (the "Jewellery Website") bearing the words, "Meet AdultFriendFinder members near Janesville -- over 20 Million Members" and containing five images of fully or partially nude women. *Id.* Plaintiff's Exhibit LL submitted as part of the Complaint shows clearly that the Jewellery

---

[1] Paragraph references are to paragraphs of plaintiff's Complaint, unless otherwise stated. Defendant sets forth these allegations only for the purpose of this 12(b)(6) motion, which should in no way be deemed an admission of any facts alleged by Plaintiff.

Website is labeled "under construction." Plaintiff's allegations are consistent with the references to AdultFriendFinder being an advertisement placed by an unknown third party on a website "under construction." Plaintiff accessed the HTML source code for the http://jewellery.makin.doorway.orge.pl/bev-stayart.html website and included it as part of the Complaint. *See* Plaintiff's Exhibit MM. Exhibit MM contains the text "bev-stayart[1]" at its top, indicates that the website is "under construction," and contains a reference to there being a "banner," *i.e.,* a banner advertisement, with a link to adultfriendfinder.com. *Id.*

## Argument

### I. Plaintiff's Allegations Fail To Include The Elements Required For A Lanham Act Claim For False Endorsement Against Various

While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1959 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. Factual allegations must possess enough heft to show that the pleader is entitled to relief and cannot stop short of the line between possibility and plausibility of entitlement to relief. *Id.* at 1959.

Furthermore, a claim may be dismissed under Rule 12(b)(6) if it includes particulars that show the plaintiff cannot possibly be entitled to the relief he or she seeks. *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). In effect, a plaintiff may plead him or herself out of court by

setting forth factual allegations "which show that he has no claim." *Jackson v. Marion County,* 66 F.3d 151, 153-54 (7th Cir. 1995).

Plaintiff's Complaint does not state a plausible claim for relief against defendants because it fails to allege facts that would satisfy the elements required for each of the claims asserted. Moreover, the facts asserted are so numerous and detailed that they make clear that Plaintiff's circumstances, however alleged, *could not* form a sound basis for any of the claims she asserts – that is, Plaintiff has effectively pled herself out of court. Accordingly, Plaintiff's complaint should be dismissed with prejudice for failure to state a claim.

Plaintiff's Seventh claim, entitled "False Endorsement Under the Federal Lanham Act," should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. There are two bases of liability under Section 43(a) the Lanham Act: (1) "false endorsement," sometimes referred to as "false association," and (2) "false advertising." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.,* 9 F.3d 561, 565 (7th Cir. 1993).[2] The Lanham Act provision relating to the former states:

> Any person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 USC § 1125(a). The Seventh Circuit has stated that liability under this provision requires "false representations concerning the origin, association or endorsement of goods or services

---

[2] A claim for false advertising under the Lanham Act requires that the claimant assert a discernable competitive injury. *Id.* Because Plaintiff is not a business competitor of Various, Plaintiff could not make out a false advertising claim and rightly does not seek to do so.

through the wrongful use of another's distinctive mark, name, trade dress or other device." *L.S. Heath & Son, Inc,* 9 F.3d at 575.

### A. Plaintiff Has Failed To Allege Use In Commerce By Defendant Of A False Designation Of Origin, False Description, Or Representation As Required By The Lanham Act.

Plaintiff has failed to allege multiple elements required for a false endorsement claim. A claim for false endorsement under the Lanham Act requires, among other things, allegations that "the defendant used in connection with goods or services a false designation of origin or false description or representation." *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). When this element is considered, at least two problems emerge with Plaintiff's Complaint.

First, Plaintiff's allegations (including its exhibits) are inconsistent with and undermine her position that Defendant ever, in any sense, "used" the term "bev-stayart" at all. The allegations show that there was a website of unknown origin, the Jewellery Website, at "http://jewellery.makin.doorway.orge.pl/bev-stayart.html," on which a banner ad for AdultFriendFinder appeared. The source code for the website, which is included in Plaintiff's Complaint as Exhibit MM, clearly shows that the reference to "AdultFriendFinder" is part of a banner add, noting that its "src," or "source" is "http://banners.adultfriendfiner.com...."[3] Accordingly, the very face of the Complaint demonstrates that the sole "use" of the term "bev-stayart" which Plaintiff attributes to Defendant is not even attributable to Defendant, but, rather, should be attributed to whomever owns or otherwise controls the Jewellery Website. It is true

---

[3] Defendant appreciates that the source code for a website is a rather obscure area. The fact that it has entered into this dispute at all serves only to demonstrate the lengths to which Plaintiff has gone to find some scintilla of harm she can allege to have suffered at the hands of Defendant.

5

that the Complaint contains the conclusory allegation that "AdultFriendFinder.com has thus deliberately appropriated the name 'Bev Stayart', trading on her goodwill and positive name recognition, to draw users to its website, completely without her authorization." (¶ 125) Nonetheless, the use of the word "thus" in this allegation shows that this allegation is but a conclusion. The clear inconsistency of the premise of this conclusion with the other allegations (including Exhibits) of the Complaint mandate that that the conclusory allegation be set aside. Accordingly, the necessary allegation that Defendant "used" the term "bev-stayart" has not sustainably been made.

Second, even if Plaintiff is found to have successfully alleged that Defendants "used" the term "Bev Stayart" in the sense of (1) including it as one small part of a much longer URL and (2) including it in source code related to the website with that URL, such use clearly does not meet the "use in commerce" requirement of the Lanham Act. The Second Circuit in *1-800 Contacts, Inc. v. WhenU.Com, Inc,* 414 F.3d 400 (2d Cir. 2005), discussed the "use in commerce" requirement of the Lanham Act. The district court in *1-800 Contacts* had relegated its discussion of the "use" requirement to a footnote and found the "use" requirement to be satisfied. *Id*. at 408. In so doing, the district court rejected the decision of two other courts that had addressed the issue. *Id*. at 408.

The Second Circuit reversed. Explaining that the decisions the district court had rejected contained "thorough analyses," it held that use by a competitor of even a *trademarked* term in the URL does not constitute "use in commerce" of the mark under the Lanham Act, even where the only difference was limited to the addition of "www." and ".com". *Id.* As the *1-800 Contacts* court stated:

6

> The district court found that the differences between 1-800's trademarks and the website address utilized by WhenU were insignificant because they were limited to the addition of the "www." and ".com" and the omission of the hyphen and a space. *See id.* We conclude that, to the contrary, the differences between the marks are quite significant because they transform 1-800's trademark . . . .

*Id.* If merely adding "www." and ".com" can transform a *trademark* to the extent use of the transformed term does not constitute "use in commerce" of the mark, then there is little doubt that adding "jewellery.makin.doorway.orge.pl/" and ".html" to an untrademarked name cannot constitute a "use in commerce."

The only other "use" alleged by Plaintiff is the inclusion of "bev-stayart[1]" in the source code of the Jewellery Website. The *1-800 Contacts* case speaks directly to this point as well. In that case, Defendants had included Plaintiff's trademark in a directory of terms, the use of which in a search engine would trigger pop-up ads. *Id.* at 408. The Court determined that including a business competitor's trademark in such a directory did not constitute a "use in commerce" under the Lanham Act:

> Although the directory resides in the C-user's [computer user's] computer, it is inaccessible to both the C-user and the general public. . . . A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

*Id.* at 409.

The decision in *1-800 Contacts* is highly relevant to the allegation that Defendant "used in commerce" the term "Bev Stayart" by including the term "bev-stayart[1]" in source code for a web page. Like the use in *1-800 Contacts*, the use is inaccessible to the general public of computer users (except those who go to the extreme length of checking the source code of the

7

web pages they browse). Although the use allegedly had some effect on the search results of a computer user, it is not a use that communicates the term to the public, and is analogous to a company's individual private thoughts about the term. This "use" is not a "use in commerce" under the Lanham Act – and it wouldn't be, even if the term "bev-stayart[1]" were a *trademark* and not simply a string of characters resembling Plaintiff's name. Because Plaintiff has not alleged any "use in commerce" as required by the Lanham Act, her claim should be dismissed.

      Plaintiff boldly alleges, in the face of all common sense, that "[o]n information and belief, Plaintiff is the <u>only</u> "Beverly Stayart" and "Bev Stayart" on the Internet." ¶ 19. Given the present procedural posture this allegation must be accepted as true, but Defendant is under no such obligation to accept the implication that any time the term "Bev Stayart," or, more relevantly for our purposes, ""http://jewellery.makin.doorway.orge.pl/bev-stayart.html" or "bev-stayart[1]" appears on a web page, or in some source code, that that term is a "designation" referring to Plaintiff herself. Plaintiff admits that she "in no way has ever engaged in a promiscuous lifestyle, or other overt sexual activities, which she and a large portion of her community and social circle consider perverse and abhorrent" (¶ 20), yet she is convinced that the appearance of that hyphenated term embedded in the URL of a website bearing overtly sexual content could only be a reference to *her,* in Walworth County, Wisconsin. It is this unjustified leap on which rests the conclusory allegation that Defendants could only have been engaged in "a deliberate appropriat[ion]" of her name – there is not a single allegation or other reason to connect Defendants' alleged actions with her. But as a matter of logic, in order for a series of letters to be a "designation" – to designate someone – there must be a group of people out there of sufficient size which connects that series of letters with what is supposedly being

8

"designated." This prerequisite for "designation" is absent, and the corresponding "false designation of origin" requirement, as discussed in *Web Printing Controls,* has gone unsatisfied. *Web Printing Controls*, 906 F.2d at 1204.

### B. Plaintiff Has Failed To Allege That Plaintiff Had Celebrity Or Distinctive Status At The Time Of Defendant's Alleged Use, As Required By The Lanham Act.

A false endorsement claim of the type Plaintiff here seeks to assert requires allegations of the "unauthorized use of celebrity's identity," such as the "misuse" of "visual likeness, vocal imitation, or other uniquely distinguishing characteristic . . . ." *Pesina v. Midway Mfg. Co.,* 948 F. Supp. 40, 43 (N.D. Ill. 1996). That is, Plaintiff "must demonstrate that he was a 'celebrity' when the defendants used his persona, name and likeness; otherwise his identity does not constitute an economic interest protectable under the Lanham Act." *Id.* [4] In his treatise, TRADEMARKS AND UNFAIR COMPETITION, J. Thomas McCarthy makes effectively the same point, noting that claims for false endorsement under the Lanham Act require the wrongful use of the mark or name of another which is "*distinctive.*" 2 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION, §§ 27:2-27:4, at 344-68 (2d ed. 1984).

In the present case, the allegations make clear that, while Plaintiff may have been a successful person involved in certain admirable pursuits, she was in no sense a "celebrity" or someone with a "distinctive" name for purposes of protection under the Lanham Act. *See* ¶¶ 9-18 (documenting Plaintiff's Bachelor's and Master's degrees, her being Vice President at an unnamed financial institution, and her involvement in animal protection programs, most

---

[4] In this connection, *Pesina* cites *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1110 (9th Cir. 1992) ("A false endorsement claim based on the unauthorized use of a celebrity's identity ... alleges the misuse of a trademark, ... such as visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiffs sponsorship or approval of the product.").

significantly by "periodic, scholarly posts" on an Internet bulletin board which was accessed a total of 17,000 times and the writing of two poems that "appear on two Danish websites supporting the preservation of the baby seal population in eastern Canada"). Notwithstanding the allegations of her prominence, Plaintiff admits that the initial Yahoo! searches she performed using the keywords "Bev Stayart" resulted in a display of only seven search engine results. ¶¶ 59-61.

The facts alleged, which presumably were the full set of facts at Plaintiff's disposal, fall far short of supporting the claim that she is a "celebrity" as required by the case law. Although she alleges that her name has "commercial value," the reasons she provides for this otherwise conclusory claim undermine her position: "The name 'Bev Stayart' has commercial value because of her humanitarian endeavors, positive and wholesome image, and the popularity of her scholarly posts on the Internet." ¶ 21. Accordingly, her "identity does not constitute an economic interest protectable under the Lanham Act." *Pesina,* 948 F. Supp. at 43; *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1110 (9th Cir. 1992).

**C. Plaintiff Has Failed To Allege Likelihood Of Confusion On The Part Of The Public Due To Defendant's Alleged Use As Required By The Lanham Act.**

Yet another reason Plaintiff has failed to allege a false endorsement or false designation claim is because she has not plausibly alleged that there is any likelihood of confusion on the part of the public due to Defendant's alleged acts. The Seventh Circuit has held that, with respect to the consumer "confusion" requirement of Sec. 43(a), "[t]he test to be used in determining whether a violation has occurred is whether 'the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public.' *Schutt Mfg. Co. v. Riddell,*

*Inc.,* 673 F.2d 202, 206 (7th Cir. 1982) (quoting *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 576 (7th Cir. 1978)). *Schutt* notes that, for injunctive relief, "[a] showing of a likelihood of confusion alone will suffice," while for the grant of money damages "[a] party … is required to show not only the likelihood of such confusion, but must demonstrate that it has been damaged by actual consumer reliance on the misleading statements." *Schutt,* 673 F.2d at 206. Plaintiff has alleged none of the foregoing.

Because the mere appearance of the words "bev-stayart" on a web page alleged to be Defendant's without any other link whatsoever to Plaintiff is insufficient to convey a connection between those terms and Plaintiff herself, there could be no "likelihood of confusion, deception or mistake" of the sort that would lead to a "false endorsement" under the Lanham Act. The same consequence follows from the fact that Plaintiff lacks the celebrity status required by 43(a) under Seventh Circuit precedent. Far from showing the likelihood of confusion, deception or mistake on the part of the consuming public, the facts conclusively demonstrate that any such confusion, deception or mistake is *impossible*, and therefore *couldn't* be alleged, since based on the allegations Plaintiff is very largely unknown to the consuming public, and, even to the *de minimis* extent she is known to it, there is absolutely no reason to imagine that the consuming public would mistake the alleged appearance of the term "bev-stayart" on a sexually explicit website as a reference to Plaintiff. After all, "Plaintiff in no way has ever engaged in a promiscuous lifestyle, or other overt sexual activities, which she and a large portion of her community and social circle consider perverse and abhorrent." ¶ 20.

### D. Plaintiff Has Failed To Adequately Allege Injury To Interests Protected By The Lanham Act.

11

Another flaw with Plaintiff's claim is that she lacks an injury to a reasonable interest protected by the Lanham Act, which is a prerequisite for standing for her false endorsement claim. As set out by the Seventh Circuit in *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 699-700 (7th Cir. 1989), standing under section 43(a) of the Lanham Act requires at least the allegation that "the party 'has a reasonable interest to be protected against' conduct violating the Act." *Id.* at 700 (*quoting Smith v. Montoro*, 648 F.2d 602, 608 (9th Cir. 1981)). *Dovenmuehle* discusses the fact that some other circuits have strictly limited standing under section 43(a) to plaintiffs who have alleged injury to a *commercial* interest. *Dovenmuehle,* 871 F.2d at 700, *citing Waits,* 978 F.2d at 1108 (resolving an apparent inconsistency in Circuit Court-level precedent by reference to "the basic principle both [precedent cases] embody: that standing under section 43(a) exists where the interest asserted by the plaintiff is a commercial interest protected by the Lanham Act") and *Colligan v. Activities Club of New York, Ltd.,* 442 F.2d 686, 692 (2d Cir. 1971) (standing to bring a claim under section 43(a) of the Lanham Act is strictly limited to members "of a purely commercial class.").

While the Court in *Dovenmuehle* declined to impose the strict requirement that the injury be to a purely commercial interest, its holding demonstrates that what qualifies as "a reasonable interest to be protected against conduct violating the [Lanham] Act" must at least be more in the nature of a commercial interest than "[an] emotional desire to prevent others from using" one's name. *Dovenmuehle,* 871 F.2d at 700-701. The *Dovenmuehle* court denied plaintiffs standing for lack of such a reasonable interest to be protected where they could not "premise their claims upon any contention that they have been damaged or [were] likely to be damaged in any commercial activity as a result of defendants' use of" their family name in commerce, where

"[n]one of the plaintiffs [were] engaged in competition, even indirectly, with the defendants," and where plaintiffs do not "claim any present intention to operate a commercial activity" under the name in question. *Id.* at 700.

Plaintiff alleges that the value of "[t]he name Bev Stayart" is derived from Plaintiff's "humanitarian endeavors, positive and wholesome image, and the popularity of her scholarly posts on the Internet." ¶ 21. Just as the plaintiffs in *Dovenmuehle,* Plaintiff has (1) failed to premise her claim upon any contention that she has been damaged or is likely to be damaged in any commercial activity as a result of defendants' alleged use of her name in commerce, (2) failed to allege that she was engaged in competition, even indirectly, with the defendants, and (3) failed to allege that she has any present intention to operate a commercial activity under the name in question. Accordingly, the holding in *Dovenmuehle* leads to the determination here that Plaintiff does not have "a reasonable interest to be protected against' conduct violating the [Lanham] Act," because her allegations do not suffice to show a commercial interest at risk. *Id.* Furthermore, the alleged injury or threatened injury to this interest of an inadequately commercial nature is *certainly* not of a sufficiently significant magnitude to provide her with standing. One must not lose sight of the fact that the only harm even arguably allegedly caused by Defendant is that the term "bev-stayart" appeared deeply imbedded in the URL and in the source code of a website that she finds objectionable – a website which was probably viewed by no one other than her. That *de minimis* injury does not provide her with standing under applicable precedent.

**E. Plaintiff Has Failed To Allege Harm As Required By The Lanham Act.**

Plaintiff has very clearly failed to allege that she has suffered harm of any consequence. In *L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc.* the Seventh Circuit rejected a false endorsement Lanham Act claim:

> because [plaintiff] failed to offer any evidence that it was entitled to any relief. In order to recover damages for a purported Lanham Act violation, the plaintiff 'must demonstrate that it has been damaged by actual consumer reliance on the misleading statements.' *Web Printing Controls Co. v. Oxy-Dry Corp.,* 906 F.2d 1202, 1205 (7th Cir. 1990) (*quoting Schutt Mfg. Co. v. Riddell, Inc.,* 673 F.2d 202, 206 (7th Cir. 1982)).

*Heath,* 9 F.3d at 575.

Although Plaintiff clearly has gone to great lengths to make the strongest case she can concerning the alleged harm she is supposed to have suffered from Defendant's alleged actions, no reasonable person could see that "harm" as anything other than *de minimis*. First, it is obvious from the face of the Complaint that the only way anyone would ever encounter the web pages that offended Plaintiff would be not only to do an Internet search for "Bev Stayart," but also to click through every web page that the search pulled up, all the way to the bottom of the list. With due respect, Defendant submits that the only person likely to do that is Plaintiff herself. Second, to qualify as harm under the *L.S. Heath & Son* requirement, the harm suffered must be *actual consumer reliance* on allegedly misleading statements by Defendant. *Id.* No such reliance has been alleged, nor could it be alleged, in the present case; there is no cause for *consumers* to seek out and exhaustively research "Bev Stayart." The only plausible conclusion based on the allegations is that no such actual consumer reliance could have occurred. Accordingly, Plaintiff's claim should be rejected under the *L.S. Heath & Son* standard without leave to amend.

## II. Plaintiff Has Failed To Adequately Allege A Claim For Violation By Defendant Of Plaintiff's Statutory Right To Privacy Or The Right Of Privacy Under Wisconsin Common Law

Although Plaintiff has not identified the sub-section of Wis. Stat. § 995.50 she contends was violated by Defendant, she certainly could not have meant § 995.50(2)(a) (requiring an intrusion "in a place that a reasonable person would consider private"), (2)(c) (requiring "[p]ublicity given to a matter concerning the private life of another"), or (2)(d) (relating to criminal nude depictions of an unconsenting subject).

Accordingly, Plaintiff must intend to allege a claim under § 995.50(2)(b), which bars "[t]he use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian." Sec. 995.50(3) goes on to state that "[t]he right of privacy recognized in this section shall be interpreted in accordance with the developing common law of privacy . . . with due regard for maintaining freedom of communication, privately and through the public media."

Indeed, the Wisconsin Supreme Court only recognized a common law claim for invasion of privacy after the passage of the statute and by explicit reference to that recently-enacted statute, which was later re-numbered § 995.50. *Hirsch v. S. C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 387, 280 N.W.2d 129, 132 (1979). The statute was enacted after the events underlying *Hirsch* had occurred, *see id.* at 386, so the statute was not applicable to the case, but the clear intention of the *Hirsch* court in interpreting the law going forward was to make no distinction between a statutory and a common law claim. In fact, in discussing the common law claim, it often described its elements with the same language used in the statute. *See id.* As the *Hirsch*

stated, their purpose is to protect "the property rights in the publicity value of aspects of a person's identity," that is, "to protect the property rights in one's identity or name from commercial exploitation by others." *Id.* at 383, 395.

In simultaneously setting out the parameters of the statute and the newly recognized tort, the *Hirsch* court distinguished "the tort of appropriation [from] other torts involving invasion of privacy" in that only the former hangs on the question of whether a person has "a property right in his name or identity." *Id.* at 390, 397. Only where there is such a right, "the possessor of that property right may place [limitations] upon the commercial and public use of the name." *Id.* at 397. In applying the question of whether the plaintiff in that case, former football player Elroy "Crazylegs" Hirsch, had a property right in his name that could support a claim for invasion of privacy, the Wisconsin Supreme Court quoted a law review article entitled, *The Tort of Misappropriation of Name or Likeness Under Wisconsin's New Privacy Law,* 1978 WIS. L. REV. 1029, 1046 -- an article that refers to the newly enacted invasion of privacy statute, which is now § 995.50. As that article states: "The rule is fairly well established that well known athletes have a property right in their identities and are allowed to recover for wrongful appropriation." 1978 WIS. L. REV. at 1046.

The foregoing makes clear that under Wisconsin law the presence of a property right in one's name is a prerequisite to a claim for invasion of privacy by means of appropriation of that right. In the present case, as discussed above, the allegations demonstrate that Plaintiff has no celebrity status, her name has no distinctiveness, and, indeed, no grounds for believing that the term "bev-stayart" without any additional context is rightly taken to refer to her. Plaintiff thus could not have a "property right" in her name of the sort required for an appropriation claimant

16

under the Wisconsin common law and § 995.50. *See Hirsch*, 90 Wis. 2d at 387. Accordingly, Plaintiff's invasion of privacy claims should fail.

A comparison of the RESTATEMENT (SECOND) OF TORTS 652A, B, C and D (1977) with § 985.50(2)(a), (b) and (c) reveals that the statute, and *ipso facto* the Wisconsin common law, are modeled after the Restatement, with certain modifications not relevant to the present case, like the limitation of the appropriation to the context of advertising. Id., § 652C. Accordingly, the Restatement's limitation that "[i]n order that there may be liability … the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness" is applicable here.

As discussed above, the face of Plaintiff's Complaint demonstrates that Defendant in this case (1) did not in fact use the term "bev-stayart" at all – having only placed advertising on a website that made such use – and therefore did not "appropriate" anything; and (2) did not enjoy any benefit from reputation, prestige, social or commercial standing, public interest or other values of Plaintiff's name, since – as the Complaint makes evident – (a) Plaintiff's name, in the vast context of the Internet, did not possess these virtues to the extent needed to state a claim; and (b) Defendant's alleged use of the term "bev-stayart" was so *de minimis* that no such benefit could possibly have accrued to Defendant.

### III. All Of Plaintiff's Claims Against Various Are Barred By The Communications Decency Act

Title 47 U.S.C. § 230 is part of the Communications Decency Act ("CDA") of 1996. The CDA embodies a strong legislative intent to foster the Internet and to protect interactive computer services, such as those operated by Defendant, against liability of the sort that plaintiff

17
Case 2:09-cv-00116-RTR    Filed 04/06/09    Page 17 of 20    Document 15

attempts to impose here. According to the CDA, it is the policy of the United States "to promote the continued development of the Internet and other interactive computer services and other interactive media" and to keep it "unfettered by Federal or State regulation" (47 U.S.C. § 230 (b)(1) and (2)).

Subsection (f)(2) of § 230 defines an "interactive computer service" as "any information service, system or access software provider that provides or enables computer access by multiple users to a computer server." It is clear from Plaintiff's Complaint, which describes Defendant as a company which "markets and sells on-line adult-oriented social networking services," ¶ 49, that Defendants' services are interactive computer services. Subsection (c)(1) of 47 U.S.C. § 230 provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Subsection (e)(3) of 47 U.S.C. § 230 provides: "No cause of action may be brought and no liability imposed under any State or local law that is inconsistent with this section." In *Chicago Lawyers' Comm., Civ. Rights v. Craigslist*, 461 F. Supp. 2d 681 (N.D. Ill. 2006), *aff'd,* 519 F.3d 666 (7th Cir. 2008), the court granted Craigslist's motion for judgment on the pleadings on the basis of its argument that under 47 U.S.C. § 230 Craigslist was a provider of interactive computer services and therefore immune to claims based on content posted by third parties on its website. District Courts in the Seventh Circuit have applied 47 U.S.C. § 230 to dismiss cases relevantly identical to this one. *See Morrison v. American Online, Inc.,* 153 F. Supp. 2d 930 (N.D. Ind. 2001) (granting AOL 12(b)(6) dismissal where a third party allegedly posted material defamatory to plaintiff via AOL's email service).

18
Case 2:09-cv-00116-RTR    Filed 04/06/09    Page 18 of 20    Document 15

As discussed above, it is evident from the face of the Complaint that the term "bev-stayart" was in fact used only by a third party content provider, *i.e.,* whoever owns or otherwise controls the Jewellery Website, and Defendant's only involvement is that the third party made use of Defendant's interactive computer service. Accordingly, Defendant is immune to Plaintiff's claims, pursuant to 47 U.S.C. § 230(c)(1) and (e)(3).

CDA immunity applies even if Plaintiff's state claims were to be construed as encompassing "intellectual property." The immunity created by § 47 U.S.C. 230(c)(1) is limited by § 230(e)(2), which requires the court to construe Section 230(c)(1) in a manner that would neither "limit or expand any law pertaining to intellectual property." But "intellectual property" as used in the statute refers only to federal intellectual property claims; the only Circuit Court to address the issue has held that there is immunity for state claims, even if they are characterized as state "intellectual property" claims. *See Perfect 10, Inc. v. CCBill LLC,* 481 F.3d 751, 768 (9th Cir. 2007), *cert. denied,* 128 S. Ct. 709 (2007) (CDA immunity applied to state law claims of unfair competition, false advertising and violation of right of publicity).

## Conclusion

None of Plaintiff's claims against Defendant Various, Inc. has been adequately alleged, even by Plaintiff's highly detailed forty-four page Complaint. Indeed, not only has Plaintiff failed to show that her claims are *plausible*, as required by the U.S. Supreme Court in *Bell Atlantic*, but also the Complaint's detail includes particulars that show the Plaintiffs cannot possibly be entitled to the relief they seek, thus justifying dismissal under the Seventh Circuit's standard in *Farley*. In each case Plaintiff has failed to allege multiple, mandatory elements.

19

Furthermore, each of her claims is barred by provisions of the Communications Decency Act, 47 U.S.C. § 230.  Accordingly, the Complaint should be dismissed, without leave to amend.

KRAVIT, HOVEL & KRAWCZYK S.C.


04/06/2009                            /s/ John F. Hovel
Date                                Stephen E. Kravit
                                    John F. Hovel
                                    Melissa S. Blair
                                    Attorneys for Defendant Various, Inc.

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson - Fifth Floor
Milwaukee, WI 53202
(414) 271-7100 - Telephone
(414) 271-8135 - Facsimile
kravit@kravitlaw.com
jfh@kravitlaw.com
msb@kravitlaw.com

**Of Counsel**
Ira P. Rothken
Rothken Law Firm LLP
3 Hamilton Landing – Suite 280
Novato, CA 94949
(415) 924-4250 – Telephone
ira@techfirm.net