UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

BEVERLY STAYART,

                Plaintiff,            Case No. 09-C-0116

v.

YAHOO! INC.,
OVERTURE SERVICES, INC., d/b/a
ALTA VISTA and VARIOUS, INC.,
d/b/a FRIENDFINDER.COM,

                Defendants.

## VARIOUS, INC'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS

### INTRODUCTION

Under the guise of responding to the Motion to Dismiss filed by Defendant Various, Inc. ("Various"), plaintiff repeatedly refers to matters outside her complaint. Coupled with her unsupportable and outrageous motion for sanctions against each lawyer who dared to move to dismiss her complaint, plaintiff apparently seeks to shift the Court's focus from the allegations in her complaint to spurious factors, such as supposed conduct of defendants not mentioned in her 203-paragraph complaint and to the conduct of counsel for defendants.

Recognizing that she has included matters outside the pleadings in her brief, plaintiff argues that, in ruling on a motion to dismiss, a Court may consider material outside the four corners of the complaint, including "materials fairly incorporated within" the complaint and "matters that are susceptible to judicial notice." (Pl's Br., pp. 6-7). To support this position, plaintiff relies solely upon cases from the First

Circuit and the District of Columbia Cicuit.

The Seventh Circuit has held that, in ruling on a motion to dismiss, "a district court may take judicial notice of matters of public record without converting" the motion to dismiss into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000). A court may also consider "[d]ocuments referred to in, but not attached to, a plaintiff's complaint that are central to its claim." *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997); *see Hrubec v. Nat'l Railroad Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)(and cases cited). A contract in a breach of contract action illustrates the type of document not attached to the complaint that can be considered. *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002).

Plaintiff makes no attempt to justify her submission of any of the materials in her appendix. At no time, for example, does she justify the citation to Troy Janisch's "interview" with the "Wisconsin Technology Network" (Pl's Br., pp. 14-15), the apparent opinion of *Compete.com,* an "Internet analytics firm," that "Beverly Stayart" is a "competitive keyword phrase" (*id.,* p. 14), the internet searches plaintiff conducted during the week of April 12, 2009 to try to support her position that Various somehow owns the Jewellery Website (*id.,* pp. 17-18), and her internet research which causes her to conclude that "Plaintiff ***is the only*** 'Bev Stayart' or 'Beverly Stayart' in the United States" (Pl's Br., pp. 21-22)(emphasis in original).

Although plaintiff may believe such materials are a matter of public record, she cites no authority for that proposition. The Seventh Circuit, however, has stated that, in the context of a motion to dismiss, a document should not be considered

"that require[s] discovery to authenticate or disambiguate" it. *Vahle,* 304 F.3d at 739. Also, a document that is not "concededly authentic" is not to be considered in a motion to dismiss. *Id.* at 738. For example, a plaintiff resisting a motion to dismiss is not permitted to have a court consider "disclaimers" on the defendant's website. *Flentye v. Kathrein,* 485 F. Supp. 2d 903, 917 (N.D. Ind. 2007).

In essence, plaintiff is seeking to amend her complaint by referring to supposed facts that are not alleged in the complaint and by discussing documents that are not mentioned in the complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc., v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984). Simply put, consideration of a motion to dismiss "is limited to the pleadings." *Id.*

This Court should ignore virtually all of the materials included in plaintiff's appendix. Plaintiff's attempt to rely upon those materials to distract the Court from the deficiencies of its allegations is unavailing.

## ARGUMENT

### I. TO SURVIVE A MOTION TO DISMISS, A COMPAINT MUST HAVE "FACIAL PLAUSIBILITY."

In its opening brief, Various, relying upon *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Thomas v. Farley,* 31 F.3d 557 (7th Cir. 1994), argued that plaintiff's complaint does not state a plausible claim for relief. (Opening Br., pp. 3-4). The United States Supreme Court recently affirmed its decision in *Twombly,* stating that "[a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*

*v. Iqbal*, \_\_\_\_ S. Ct. \_\_\_\_, 2009 WL 1361536 at *12 (May 18, 2009), (quoting *Twombly*, 550 U.S. at 555).

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face,'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557.)

Taking Rule 8 into account, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Aschcroft* at *13. "While legal conclusions can provide the framework of a complaint, they must be supported by . . . well pleaded factual allegations." *Id.*

It is against this backdrop that the complaint here should be considered. The lack of "well-pleaded factual allegations" in the complaint shows that the plaintiff has not asserted plausible claims upon which relief can be granted.

    **A.    Plaintiff's Seventh Claim For Relief Fails to State A Claim For False Endorsement Under The Lanham Act.**

Plaintiff cites a Sixth Circuit case for the proposition that a claim under section 43(a)[1] of the Lanham Act "requires ***two*** basic elements: (1) false designation

---

[1] Plaintiff's brief refers to her claim a "false designation of origin claim," (Pl's Br., p. 10), and the Complaint labels it a "false endorsement" claim. (See Compl., Seventh Claim For Relief). Although perhaps confusing, the labels are immaterial.

must have substantial effect on interstate commerce; and (2) false designation must create likelihood of confusion." (Pl's Br., pp. 10-11) (emphasis in original) (citing *Johnson v. Jones,* 149 F.3d 494, 502 (6th Cir. 1998)). The problem with plaintiff's complaint is that it does not allege facts that satisfy the essential elements of her Lanham Act claim, including the two elements articulated in *Johnson*.

    a.    **Plaintiff's Complaint does not satisfy the "use in commerce" element of a Lanham Act claim.**

Plaintiff cites *Johnson* for the proposition that a "false designation must have [a] substantial effect on interstate commerce." (Pl's Br., p. 11). In fact, *Johnson* stated that a false designation must have a "substantial ***economic*** effect" on interstate commerce. *Johnson,* 149 F.3d at 502 (emphasis supplied); *Condit v. Star Editorial, Inc.*, 259 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003) ("competitive" harm is needed). That plaintiff omitted *Johnson's* requirement of a substantial "economic" effect on interstate commerce is understandable. Plaintiff's complaint is without any "well– pleaded factual allegations," *Iqbal*, 2009 WL 1361536 at *13, of any "economic" effect, let alone a "substantial" one, caused by the alleged false endorsement.

Indeed, plaintiff's brief actually highlights her complaint's deficiencies. As plaintiff argues:

> In essence, Plaintiff alleges that Various, d/b/a ***AdultFriendFinder.com*** "displayed" its sexually explicit advertising on a web page on the Internet, which also bore her name in the domain "path" of the URL. ***Nothing more*** need be alleged to demonstrate "use in commerce" under the Lanham Act.

(Pl's Br., p. 20)(emphasis in original). The authority plaintiff cites does not support this argument. Even if it is assumed that the Jewellery Website contained plaintiff's

5

name, this minimal "use in commerce" does not satisfy the substantial economic effect required for a false endorsement claim.

Plaintiff's attempt to distinguish *1-800-Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005), is unpersuasive. As plaintiff argues: "The Second Circuit case involved trademark infringement. This is a false designation of origin case, not a trademark infringement case." (Pl's Br., p. 19)(emphasis deleted). The flaw with this argument is that *1-800-Contacts* was predicated upon the "use in commerce" requirement of the Lanham Act – the same act plaintiff here relies upon in her Seventh Claim For Relief.

Moreover, Plaintiff makes no attempt to address Various' argument that, if adding "www." and ".com" can transform a trademark *(*as it did in *1-800-Contacts)* so that its use does not constitute "use in commerce" of a trademark, then adding "jewellery.makin.doorway.orge.pl/" before and "html" after a non-trademarked name ("bev-stayart") similarly does not satisfy the "use in commerce" requirement.

Plaintiff next invokes the "common law doctrine of contributory infringement" and argues that two or more entities may be held responsible for wrongful appropriation, (Pl's Br., pp. 9-10), and cites *Gershwin Pub. Corp. v. Columbia Artists Mgmt. Inc.,* 443 F.2d 1159 (2d Cir. 1971), a case decided under the copyright laws. *Gershwin* offers no assistance to a Lanham Act claim[2] and her complaint offers no basis for such "contributory infringement."

Plaintiff also argues that "[a] reasonable inference from the allegations in the

---

[2] Perhaps because plaintiff's brief already was butting up against the page limit, plaintiff then refers to cases cited in her opposition to Yahoo's motion to dismiss. Plaintiff there discusses what she calls "contributory trademark liability." (Pl's Br., p. 24). The fact is that the complaint does not provide a basis for concluding that Various had engaged in such "contributory" conduct.

6

complaint is that Various is involved in an illegal joint venture with" the owner of the Jewellery Website. (Pl's Br., p.10). Putting aside the fact that she does not cite one Wisconsin case to support her "joint venture" theory, her complaint makes absolutely no reference to a "joint venture." There are no "well-pleaded factual allegations" upon which a court could rely to conclude that Various is "plausibly" a part of some joint venture. *Iqbal*, 2009 WL 1361536 at *14-15.

      **b.    Plaintiff also has failed to allege the Likelihood Of Confusion necessary for a Lanham Act claim.**

Plaintiff's false endorsement claim also does not satisfy the "likelihood of confusion" requirement of the Lanham Act. The standard "is whether 'the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public'." *Schutt Mfg. Co. v. Riddell, Inc.,* 673 F.2d 202, 206 (7th Cir. 1982).

Plaintiff argues that the mere "[u]se of [her] name in the URL" satisfies this element. (Pl's Br., p. 11) Her reliance on *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1064 (9th Cir. 1999), is misplaced. *(*Pl's Br., pp. 12-13). Specifically, plaintiff quotes from the Ninth Circuit's use of a hypothetical illustration in which Blockbuster puts a billboard on a highway that misleads customers as to the location of a competitor's store and, instead, directs them to a Blockbuster store. *Brookfield,* 174 F.3d at 1064. As the Ninth Circuit there stated:

> Even consumers who prefer West Coast [the competitor] may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast. Nevertheless, the fact that there is only initial

7

>consumer confusion does not alter the fact that Blockbuster
>would be misappropriating West Coast's acquired goodwill.

*Brookfield,* 174 F.3d at 1064.

*Brookfield* does not in any way support the argument that her complaint satisfies the "likelihood of confusion" element. It is difficult to understand how plaintiff seeks to equate the untrademarked term "bev-stayart," as used in the URL http://jewellery-makin.doorway.orge.pl/bev-stayart.html, with the stand alone usage on highway signs of the trademarked names of well established video stores.[3]

Various recognizes that plaintiff has alleged that "AdultFriendFinder.com has thus deliberately appropriated the name 'Bev Stayart', trading on her goodwill and positive name recognition, to draw users to its website . . . " (Complaint, ¶ 125). It also recognizes that plaintiff has alleged that "Various' unauthorized use of plaintiff's name is likely to cause confusion or mistake and to deceive consumers as to the endorsement, sponsorship, affiliation, connection or association of Bev Stayart with AdultFriend Finder.com." (*Id.,* ¶ 189).

Nonetheless, plaintiff "has pleaded [her]self out of court." *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). The details included in her 203 paragraph complaint show that the simple use of the term "bev-stayart" on a web page that is alleged to be Various' is insufficient to give rise to the "likelihood of confusion" required for a false endorsement claim. Although plaintiff may have tried to assert allegations that are consistent with liability,[4] her complaint has "stop[ped]" well

---

[3] That is, where the names "Blockbuster" and "West Coast" are used on their own, as opposed to being part of a URL.

[4] In this section of her brief, plaintiff refers to a December 2007 complaint that the Federal Trade Commission (FTC) filed against Various in California. Plaintiff contends that "[t]he activites

"short of the line between possibility and plausibility of 'entitlement to relief'." *Iqbal*, 2009 WL at *12.

### c. Plaintiff's Lanham Act claim fails because she has not alleged that she had Celebrity or Distinctive status.

In its opening brief, Various argued that plaintiff also failed to state a Lanham Act claim because she does not have (and did not allege) the celebrity or distinctive status that constitutes an economic interest protectable under the Lanham Act. Various relied upon, among other things, the decision in *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40 (N.D. Ill. 1996), a case that arose in its entirety after The Trademark Law Revision Act of 1988 – an act which amended the Lanham Act, including section 43(a) of that Act.[5]

After noting that the plaintiff in *Pesina* had asserted a false endorsement claim, the court stated: "Mr. Pesina must demonstrate that he was a 'celebrity' when the defendants used his persona, name, and likeness; otherwise, his identity does not constitute an economic interest protectable under the Lanham Act." *Pesina*, 948 F. Supp. at 43. The court even noted that Mr. Pesina's own expert had conceded that plaintiff's "identity . . . lacked commercial value." *Id.*

---

challenged by the FTC are "***similar*** to the misconduct alleged by Plaintiff." (Pl's Br., p. 16) (emphasis supplied). Plaintiff notes that Various agreed to a permanent injunction to settle the FTC's charges and that this agreement was signed on behalf of Various by Attorney Ira Rothken, who has appeared for Various in this litigation. Plaintiff's discussion of the FTC matter has nothing to do with her claims here. There is no legitimate reason for plaintiff to have cited this FTC matter. If plaintiff believes that Various has violated the FTC injunction, she should address that matter to the California court that issued that injunction.

[5] In her motion for sanctions, plaintiff chastises counsel for having cited cases that arose prior to the amendments to the Lanham Act caused by the Trademark Law Revision Act of 1988 ("TLRA"). The TLRA codified decisions under the Lanham Act, *Bristol-Meyers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 n.1 (2d Cir. 1992). – indicating that prior decisions are not without persuasive effect.

9
Case 2:09-cv-00116-RTR   Filed 06/04/09   Page 9 of 15   Document 30

Plaintiff's brief makes no mention of *Pesina*. Instead, plaintiff states that "celebrity" does not appear in section 43(a) and argues that the word "person," as used in the Lanham Act, "is to be ***broadly*** interpreted." (Pl's Br., p. 23)(emphasis in original). Plaintiff cites no case for the proposition that a plaintiff need not be a celebrity or have a distinctive status to assert a Lanham Act claim, other than the decision in *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008).

The district court in *Friendfinder* concluded that one need not be a "celebrity" to maintain the "sort of 'false endorsement' claim that the plaintiff has asserted." *FriendFinder*, 540 F. Supp. 2d at 306. The court explained:

> McCarthy, for one, believes that "under the proper circumstances, any person, celebrity or non-celebrity, has standing to sue under § 43(a) for false or misleading endorsements." McCarthy, *Rights of Publicity,* § 5:22. And there does not appear to be any authority from the First Circuit on this point one way or the other. For purposes of this motion, then, the court rules that the plaintiff's claim for false designation under 15 U.S.C. § 1125(a)(1)(A) does not fail simply because she is not a "celebrity."

*Id*.

The decision in *FriendFinder* appears to be in conflict with the decision in *Pesina*. It also appears to be at odds with other decisions, including the Sixth Circuit's decision in *Parks v. LaFace Records,* 329 F.3d 437 (6th Cir. 2003).

In that case, Rosa Parks, the civil rights activist who gained prominence during the Montgomery bus boycott in 1955, brought an action against a record producer for using her name as the title of a song. *Id*. at 431. She contended that the use of her name constituted false advertising under section 43(a) of the Lanham Act and intruded on her common law right of publicity under Michigan law. *Id*.

After explaining that she could bring a 43(a) claim even though her name had not been trademarked, the court held that Ms. Parks "clearly has a property interest in her name" and that "[i]t is beyond question that" she "is a celebrity." *Id.* at 447. Then, in discussing the right of publicity claim that Parks had asserted, the court explained:

> The right of publicity protects the identity of a celebrity from exploitive commercial use. *See Carson v. Here's Johnny Portable Toilets, Inc.* 698 F.2d 831, 835 (6th Cir. 1983). "The theory of the right is that a celebrity's identity can be valuable in the promotion of products, and the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity."[6] As such, the common law right of publicity forms a species of property right.

*Parks,* 329 F.3d at 459; *see Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 624 (6th Cir. 2000).

Although the literal terms of the Lanham Act do not require that a plaintiff have a celebrity or distinctive status, the very nature of a false endorsement claim suggests that some celebrity or distinctive status is required. It is not "plausible" that one can commercially exploit a name that is not recognizable under the circumstances. *See Iqbal*, 2009 WL at *12. The fact that, as plaintiff contends, non-celebrities are used for advertising does not mean that a "non-celebrity" without a distinctive name has an interest that is protectable under a false endorsement claim.

### B. Plaintiff Has Failed To State A Claim For Violation Of Wisconsin's Statutory Right To Privacy Or The Right Of Privacy Under Wisconsin's Common Law.

Without mentioning section 995.50, Wisconsin's right to privacy statute, or

---

[6] As the court stated, "Parks' right of publicity argument tracks that of her Lanham Act claim. She alleges that Defendants have profited from her fame by using her name solely for a commercial purpose. . . ." *Parks*, 329 F.3d at 459-60.

11

any Wisconsin case, plaintiff next argues that she has "more than adequately alleged violation of her right to privacy under both the common law and statutory law of Wisonsin." (Pl's Br., p. 27) Plaintiff, however, makes no attempt to fit the authority cited in her brief into the wording of section 995.50 or the discussion of privacy in *Hirsch v. S. C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 280 N.W.2d 129 (1979), a case cited by Various.[7]

The fact is that, as *Hirsch* reveals, the tort of "appropriation" is different from "other torts involving invasion of privacy" in that the tort of appropriation is dependent on whether the plaintiff has "a property right in his name or identity." *Hirsch*, 90 Wis. 2d at 390, 397. Indeed, the court even discussed the evidence that showed that Elroy Hirsch's name had "commercial value." *Id.* at 397. Plaintiff's name does not have the "commercial value" needed for an appropriation of privacy claim under Wisconsin law.

### C. Plaintiff's Claims Against Various Are Barred By The Communications Decency Act.

In its opening brief, Various showed that the Communications Decency Act of 1996 ("CDA"), 47 USC § 230, bars plaintiff's state law claims against Various. Plaintiff does not seriously take issue with Various' argument that Various is an "interactive computer service" within the meaning of the CDA. Nor does plaintiff dispute that the complaint fails to allege that Various is the creator of the Jewellery Website and URLs containing the alleged text strings.

Apparently recognizing the applicability of the CDA to Various, plaintiff cites

---

[7] Plaintiff does cite to *Hirsch* in the "Introduction" section of her brief. (Pl's Br., p. 5).

*Doe v. Friendfinder Network, Inc.,* 540 F. Supp. 2d 288 (D.N.H. 2008), to argue that her three claims against Various are "intellectual property" claims and are thus not affected by the CDA. Plaintiff's reliance on *Friendfinder* raises two separate issues, neither of which she discuses.

The first issue is whether state "intellectual property" law claims are excepted from the immunity provisions of the CDA. This issue emerges from the language in the CDA that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). *Friendfinder* relied on *dicta* from the First Circuit in concluding that § 230(e)(2) applies to both state and federal intellectual property law claims. *Friendfinder*, 540 F. Supp. 2d at 299, 302. In so holding, the court rejected the Ninth Circuit's holding in *Perfect10, Inc. v. CCBill, LLC* 488 F.3d 1102, 1118-19 (9th Cir. 2007).

Various relied upon *Perfect10* in its opening brief, and plaintiff makes no attempt to distinguish it. Various submits that the decision in *Perfect10* is more in line with the letter and spirit of the CDA than is the decision in *FriendFinder*. As the Tenth Circuit stated, the lack of uniformity associated with state laws that protect intellectual property is "contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes." *Perfect10*, 48 F.3d at 1118.

If state intellectual property law claims are excepted from the CDA's immunity provisions, the second issue that emerges from plaintiff's reliance on *Friendfinder* is whether plaintiff's claim for invasion of privacy is a "law pertaining to intellectual property" within the meaning of § 230(e)(2). The fact that plaintiff makes no

13

attempt to explain how Wisconsin's statutory right of privacy or common law right of privacy constitute "law[s] pertaining to intellectual property" within the meaning of § 230(e)(2) is telling.[8]

Plaintiff's apparent assumption that a right of privacy claim under Wisconsin law is akin to a right of privacy claim under New Hampshire law is mistaken. The decision in *Hirsch*, which traces the development of the right of privacy claims and notes that Wisconsin was one of the last three states to recognize the right of privacy, 90 Wis. 2d at 388, does not discuss the right of privacy in the context of "intellectual property" law. Indeed, the court's recognition of this independent tort was entirely separate from its discussion of whether Wisconsin also recognizes a claim for the infringement of a trade name under the common law, a generally recognized "intellectual property" claim. *See id.* at 398-400 and 403. If, in fact, Wisconsin viewed a right of privacy claim as part of "intellectual property" law, one must wonder why *Hirsch* independently discussed whether each of those two torts should be recognized under Wisconsin law. Moreover, a review of plaintiff's complaint suggests that her claim sounds more like a defamation claim, a claim that is barred by the CDA. *Morrison v. America Online, Inc.,* 153 F. Supp. 2d 930, 935 (N.D. Ind. 2001).

Plaintiff's state law claims against Various are barred by the CDA. Even if § 230(e)(2) of the CDA is interpreted as extending to state law intellectual property claims, the Wisconsin right of privacy claims asserted by plaintiff do not fall within

---

[8] Indeed, plaintiff does not even explain the subsection of section 995.50 under which she is asserting her claim. (*See* Opening Br., p. 15). *Friendfinder* held that three of the torts encompassed by the "right of privacy" tort are not "intellectual property" claims. *Friendfinder,* 540 F. Supp. 2d at 302-03.

14
Case 2:09-cv-00116-RTR   Filed 06/04/09   Page 14 of 15   Document 30

the scope of "intellectual property" claims that are expected from the immunity provisions in the CDA.

## CONCLUSION

Plaintiff's 203 paragraph and 44 page complaint does not sufficiently allege any of her claims against Various. Her complaint should be dismissed with prejudice.

KRAVIT, HOVEL & KRAWCZYK S.C.


  /s/ *John F. Hovel*
Stephen E. Kravit
John F. Hovel
Melissa S. Blair
Attorneys for Defendant Various, Inc.

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson - Fifth Floor
Milwaukee, WI 53202
(414) 271-7100 - Telephone
(414) 271-8135 - Facsimile
kravit@kravitlaw.com
jfh@kravitlaw.com
msb@kravitlaw.com

**Of Counsel**
Ira P. Rothken
Rothken Law Firm LLP
3 Hamilton Landing – Suite 280
Novato, CA 94949
(415) 924-4250 – Telephone
ira@techfirm.net