IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| BEVERLY STAYART, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-C-0116 |
| YAHOO! INC., a Delaware corporation; | ) |
| OVERTURE SERVICES, INC., d/b/a ALTA VISTA, a Delaware corporation; and | ) |
| VARIOUS, INC., d/b/a FRIENDFINDER.COM, a California Corporation, | ) |
| Defendants. | ) |

**DEFENDANT YAHOO! INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO DISMISS COUNTS I-VI OF PLAINTIFF'S COMPLAINT**

Its grandiose tone and extensive use of exclamation points, pithy phrases and all caps notwithstanding, Plaintiff Beverly Stayart's (hereinafter "Plaintiff") Response to Yahoo!'s Motion[1] underscores an essential truth - she is suing Yahoo! because Yahoo!'s search engine is returning search results, for third-party websites, that she does not like. Some of these sites bother Plaintiff because her name appears in association with content on third-party websites that she finds offensive, does not support, or that otherwise damages her "good name." But Plaintiff's complaint has never included any allegations, nor could it, that Yahoo! itself is using

---

[1] In her Response to Yahoo!'s Motion, Plaintiff cross-references her Response to Defendant Various, Inc.'s Motion to Dismiss for the purpose of argument. To minimize confusion as to which Response it cites in this Reply, Yahoo! refers to both Responses, and all other documents, by their docket numbers.

her name on its own behalf for any commercial advantage or promotion. Nor has Plaintiff ever sold publicity rights to her name for any purpose. Rather, Plaintiff's crusade targets the very nature of the Internet ─ she does not like the way search engines like Yahoo! and Google function to allow people to find websites that have used her name in content or metatags.[2]

Stayart betrays the true basis for this lawsuit, and identifies the proper forum for redress of her alleged ills, in the conclusion to her response in which she claims that "Yahoo! should be put out of business if it takes an Act of Congress to do so." Doc. 23 at 30. In fact, it was an Act of Congress, specifically Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, that ensured that search engines like Yahoo! can stay in business by giving them immunity for returning information about third party content supplied by other persons ─ even if Plaintiff finds that content offensive or unwelcome. To override that policy choice, Plaintiff should indeed apply to Congress, not this Court. Unless and until Congress reverses its course, however, Plaintiff can sue only the websites that are using her name, not Yahoo! for doing no more than helping her find them.

While her brief ─ rife with quotations from non-legal sources, anonymous blogs, references to complaints filed in other cases irrelevant to the proceedings,[3] and factual allegations and legal theories not introduced in her complaint ─ convincingly evokes Plaintiff's fervor, it also illuminates that she has failed to state any individualized, cognizable cause of

---

[2] Much of Stayart's response to Yahoo!'s Motion is devoted to "[t]he evils of pornography," and her perception of Yahoo!'s role in its availability on the Internet. Doc. 23 at 5. "Today it is not newspapers, but the Internet which is overstepping in every direction the obvious bounds of propriety and decency to satisfy a prurient taste, with attendant negative effects on our society." Doc. 21 at 3.

[3] Some of which she falsely portrays. For example, the *Stovall* case she references on page 6 was voluntarily dismissed by the plaintiff after she learned that the picture in question was of someone else who happened to look like her. *See Stovall v. Yahoo! Inc.*, Notice of Voluntary Dismissal, No. 07-CV-00573 (N.D. Ohio April 5, 2007). Such misrepresentations are curious given Plaintiff's separate request that both sets of defense counsel be sanctioned based on her (also erroneous) claim that counsel failed to cite relevant authority. Yahoo! will file a separate response to Plaintiff's request for sanctions.

action against Yahoo!. Her transparent attempts to conceal defamation claims beneath the cloak of "intellectual property" for the purpose of evading the immunity provided by the Section 230 of the CDA should be disregarded. Plaintiff's consistent claim is that content of these other websites damages her "good name," harm that is the very basis of a defamation claim under Wisconsin law. *Storms v. Action Wis. Inc.*, 750 N.W.2d 739, 748 (Wis. 2008). By mischaracterizing her claims to circumvent CDA immunity, Plaintiff seeks to impose breathtakingly broad liability on Yahoo! for exactly the activities for which Congress sought to protect search engines and other service providers.

Plaintiff's flawed attempt to shoehorn a defamation claim into Lanham Act and right of publicity claims is further evidenced by her inability to plead facts necessary to sustain those claims. Plaintiff's response seemingly concedes the insufficiency of her complaint, and raises for the first time on response theories of liability premised on "competitive keyword" bids by advertisers and contributory trademark infringement. Neither theory is supported by her underlying allegations of fact or by case law. On the contrary, Stayart's exhaustive efforts to sustain her claims firmly establish that she cannot allege certain core facts critical to sustain them, as her filings contain:

- no allegation that Yahoo! used Bev Stayart's name to endorse *Yahoo!'s* goods and services, as required by the Lanham Act;
- no affirmative allegation that Yahoo! used her name in advertising (by accepting advertiser bids for it as a keyword or otherwise) as required by Wisconsin law; and
- no allegation that Bev Stayart's name has acquired the commercial value required under *Wisconsin's* formulation of the right of publicity.

As Judge Posner described in *Thomas v. Farley*, Plaintiff "has pleaded [her]self out of court."[4]

## ARGUMENT

As described in Yahoo!'s initial brief, Plaintiff's claims fail under the CDA and, more

---

[4] 31 F.3d 557, 558-59 (7th Cir. 1994) ("[I]f a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court.").

- 3 -

generally, fail to state a claim. In response, Plaintiff first argues unconvincingly that her claims sound in intellectual property and are thus not subject to the CDA's immunity provisions. Second, and despite failing to plead either issue in her complaint, Stayart attempts to sustain her Lanham Act and right of publicity claims by asserting that the *potential* use of her name as a "competitive keyword" somehow establishes use by Yahoo! in its own services and/or in advertising (despite not alleging that her name was ever in fact bid upon by an advertiser), and that her Lanham Act false endorsement claim should now be construed as one for contributory trademark infringement. As discussed below, these arguments miss the mark.

**I.     Plaintiff's Claims Are Barred by the CDA.**

Stayart grudgingly accepts that Congress generally immunized online providers like Yahoo! from liability from content originating with third parties. Accordingly, her sole basis for attacking Yahoo!'s CDA immunity is construing her Lanham Act false endorsement and state law right of publicity claims as "intellectual property" claims rather than defamation-based claims, and relying on the CDA's intellectual property exception to withstand dismissal of her claims.[5]

      **A.     The Only Federal Appellate Decision to Analyze the Issue Excluded State Law Claims from the CDA's Intellectual Property Exception.**

In *Perfect 10, Inc. v. CCBill, LLC*, the Ninth Circuit considered a publisher's claims that a payment processor violated, *inter alia*, state right of publicity and false advertising laws by providing services enabling sites selling infringing copies of Plaintiff's copyrighted content to monetize their infringement. 488 F.3d 1102, 1108 (9th Cir. 2007). Recognizing that the CDA

---

[5] 47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."). Although Plaintiff suggests that her complaint should not be dismissed on CDA grounds at this stage of the proceedings, the Seventh Circuit has recognized that dismissal is appropriate for judicial economy reasons where a 12(b)(6) motion can be similarly evaluated as a motion under Rule 12(c). *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003).

- 4 -

contains no definition of "intellectual property" for purposes of the § 230(e)(2) exception, the court concluded the following:

> [T]here are many types of claims in both state and federal law which may-or may not-be characterized as "intellectual property" claims. While the scope of federal intellectual property law is relatively well-established, state laws protecting "intellectual property," however defined, are by no means uniform. Such laws may bear various names, provide for varying causes of action and remedies, and have varying purposes and policy goals. Because material on a website may be viewed across the Internet, and thus in more than one state at a time, permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes. *See* 47 U.S.C. §§ 230(a) and (b); *see also Batzel*, 333 F.3d at 1027 (noting that "courts construing § 230 have recognized as critical in applying the statute the concern that lawsuits could threaten the 'freedom of speech in the new and burgeoning Internet medium'" (*quoting Zeran*, 129 F.3d at 330)). In the absence of a definition from Congress, we construe the term "intellectual property" to mean "federal intellectual property." *Id.* at 1118-19.

The Ninth Circuit, where Yahoo! resides, remains the only federal appellate court to analyze the scope of the intellectual property immunity exception in this regard. With respect to the applicability of the CDA to her state right of publicity claims, Plaintiff urges this Court to ignore the appellate court ruling directly on point in favor of a district court case from New Hampshire.[6]

Although the *Friendfinder* decision declines to follow *Perfect 10*, the facts in the case at

---

[6] *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 298 (D.N.H. 2008). Although Plaintiff cites a number of additional cases purporting to support *Doe's* conclusion, none in fact do. *Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006) (plaintiff alleged defendant *created* the content in question); *Whitney Info. Network, Inc. v. Verio, Inc.*, No. 2:04CV462FTM29SPC, 2006 WL 66724 (M.D. Fla. Jan. 11, 2006) (defendant did not *seek* dismissal of Lanham Act or state trademark claims); *Gucci Am., Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001) (plaintiff asserted actual trademark rights); *Ford Motor Co. v. GreatDomains.com, Inc.*, No. 00-CV-71544-DT, 2001 WL 1176319 (E.D. Mich. Sept. 25, 2001) (same).

hand illustrate the *Friendfinder* court's shortsightedness.  In *Friendfinder*, the court declares "shaky" the Ninth Circuit's "assumption that the intellectual property laws of the several states so differ from each other, and from their federal counterpart, that complying with the state laws would burden service providers in a way or to a degree that complying with the federal law would not."  *Friendfinder*, 540 F. Supp. 2d at 301.  However, the validity of the Ninth Circuit's assumption is illustrated by Plaintiff's own brief.  In addressing her failure to allege that Yahoo! used her name for advertising purposes as required under Wisconsin law,[7] Plaintiff cites no Wisconsin case law supporting her argument, but instead asks the court to apply Illinois law regarding improper commercial use.[8]  In her response to defendant Various' motion to dismiss, Plaintiff cites to right of publicity cases from at least six states outside of Wisconsin.[9]  As Plaintiff's own briefs amply demonstrate, states may codify some claims and not others, require different elements of proof for these claims, establish different damages criteria, or even title similar causes of action in different ways (compare Wisconsin "Invasion of Privacy" with Illinois "Right of Publicity").  As *Perfect 10* correctly demonstrates, this uncertainty undermines the express intent of Congress "to promote the continued development of the Internet and other interactive computer services and other interactive media," and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."  47 U.S.C. § 230(b)(1) and (2).  Yahoo! respectfully submits that this Court should follow *Perfect 10* and bar Stayart's state law claims under the CDA.

      **B.**    **All of Plaintiff's Claims Sound in Tort, Not Intellectual Property.**

Plaintiff's allegations against Yahoo!, if true, would potentially form the basis for a

---

[7] *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 403 (1979).

[8] Doc. 23 at 27 (citing *Brown v. ACMI Pop Div.*, 873 N.E.2d 954 (Ill. App. Ct. 2007)).

[9] Doc. 21 at 27-29.

defamation claim. The elements of a Wisconsin defamation claim not involving a public figure are (i) a false statement, (ii) communicated to another person, (iii) tending to harm one's reputation so as to lower that person's estimation in the community or deter others from associating with that person. *Storms*, 750 N.W.2d at 748. Here, Plaintiff alleges that Yahoo!'s search results are "false" and that her reputation will be damaged among viewers. The allegations in her complaint begin with a lengthy discussion of "Bev Stayart's Name and Image." (Compl. ¶¶ 9-22.) Her communications with Yahoo!, which she attaches to her complaint, repeatedly reference defamation: "[M]y privacy and reputation have been seriously violated and defamed." (Compl. at Ex. CC.) "This material is both pornographic and demeaning to her. The site is using her name without her permission to defame and denigrate her good name." (*Id.* at Ex. DD, EE.) "This is an attempt to slander me with pornographic photos purporting to be me." (*Id.* at Ex. Y.) "I believe that Yahoo! has invaded my privacy by the publishing, and/or facilitating the publishing, of false and defamatory pornographic photos purporting to be me." (*Id.* at Ex. Z.)

Plaintiff's artful attempt to recast her Lanham Act and right of publicity claims is further exposed in her responses. In Plaintiff's response to Various' motion, she emphasizes that the greatest harm she has suffered is not commercial, but to her "self-esteem." (Doc. 21 at 28). When arguing that her § 43(a) false endorsement claim concerns "intellectual property," Plaintiff opts to characterize her name as a "trademark" and cites trademark infringement and even trade secret theft cases, whereas she explicitly disavows that her claim sounds in trademark when it suits her 12(b)(6) arguments under the Lanham Act.[10] Allowing such sham pleading to circumvent CDA protection will only invite future plaintiffs to follow the same course, and will eviscerate the service provider exceptions provided by Congress.

---

[10] Doc. 21 at 19 ("This is a false designation of origin case, *not* a trademark infringement case." (emphasis in original)).

In short, Plaintiff's claims plainly arise from her allegations that her reputation is sullied, not from allegations that her commercial endorsement was not properly compensated. Indeed, she has failed to identify *any* commercial value to that endorsement, particularly in the context in which the third party websites use the words "bev stayart." Her allegations in fact yield the opposite conclusion: the "bev stayart" name, by Plaintiff's own admission, has zero recognition or value in the markets promoted by the websites cited in her complaint as she has no connection to them. Accordingly, both her state and federal claims in fact sound in defamation, and not in intellectual property, and thus the CDA bars them.[11]

Finally, Plaintiff's demand that this Court read the CDA narrowly is at odds with both Congressional intent and Seventh Circuit law. Plaintiff suggests that "Congress only intended to overrule *Stratton*," a New York state court case where an internet service provider was held liable for defamatory content posted by a user on a message board.[12] First, this assertion is belied by the very Senate report Plaintiff cites: "*One* of the specific purposes of this section is to overrule *Stratton-Oakmont v. Prodigy* and any other similar decisions. . . ." S. Rep. No. 104-230, pt. 2, (1996) (emphasis added). Clearly, Congressional purpose did not stop at *Stratton*. The Seventh Circuit explicitly recognized this as well: "Section 230(c)(1) is general. Although the impetus for the enactment of § 230(c) as a whole was a court's opinion holding an information content provider liable, as a publisher, because it had exercised some selectivity with respect to the sexually oriented material it would host for customers, a law's scope often differs from its genesis." *Chicago Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008). The court goes on to note that, while the *Stratton* decision

---

[11] *See Kruska v. Perverted Justice Found. Inc.*, No. CV 08-0054-PHS-SMM, 2008 WL 2705377, at *3 (D. Ariz. July 9, 2008).

[12] Doc. 23 at 18; *see Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. May 24, 1995).

- 8 -
Case 2:09-cv-00116-RTR   Filed 06/05/09   Page 8 of 15   Document 34

held a service provider liable for sexually oriented material, the statute as enacted protects providers from being treated as speaker or publisher of *any information* provided by a third party. *Id.*

## II. Plaintiff's Claims Fail Under Rule 12(b)(6).

Having been put on notice of the infirmity of her causes of action due to her failure to allege that *Yahoo!* used her name in *its own* products or services (for her Lanham Act claim) or in advertising (for her state law claims), and in apparent recognition that her complaint as filed was inadequate, Plaintiff introduces two new theories in her response in a futile attempt to cure these infirmities. Even if these new bases for liability are not procedurally barred, neither Plaintiff's generous reading of her own pleadings nor her introduction of new allegations, "evidence," and legal theories in her response are sufficient to support her claims.

### A. Plaintiff's Response Still Fails to Allege that Yahoo! Used Her Name in Connection with Yahoo!'s Services as Required by the Lanham Act or in Advertising as Required by Wisconsin Law.

As stated in Yahoo!'s motion to dismiss, Plaintiff's Section 43(a)(1)(A) claim requires that Yahoo! used "bev stayart" falsely in connection with promoting Yahoo!'s own products and services. *Heartbrand Beef, Inc. v. Lobel's of New York, LLC*, No. v-08-62, 2009 WL 311087, at *2-3 (S.D. Tex. Feb. 5, 2009). In her response, Plaintiff dismisses Yahoo!'s argument, which relies on the plain language of Section 43(a), as "pure hogwash" and reformulates the Lanham Act test by conveniently omitting the "his or her" modifier of the goods or services at issue and effectively replacing it with "any" goods or services.[13] Plaintiff cites two cases allegedly supporting her narrowed view of 43(a), neither of which support her contention and one of which explicitly endorses Yahoo!'s argument.[14] As shown below, Plaintiff's two brand new bases

---
[13] Doc. 23 at 21.
[14] *Id.*; *see Warner Bros. Entm't. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 268 (S.D.N.Y. 2007) (Plaintiffs must show "confusion as to plaintiff's sponsorship or endorsement of *the*

- 9 -

similarly fail to cure this fatal flaw in her Lanham Act theory.

>    1.  *Plaintiff never alleges that any third-party bid on the phrase "bev stayart" as a "competitive keyword."*

In a desperate attempt to sustain her claim, Plaintiff *argues* that because Yahoo! generally permits advertisers to bid on "competitive keywords" to ensure their advertisements are displayed when those keywords are searched for, and because the phrase "bev stayart" (like any other phrase) could be such a keyword, that the Court can infer that Yahoo! used her name in connection with Yahoo! services (for her Lanham Act claim) and in advertising (for her state claims). First, Plaintiff's complaint contains no allegations about "competitive keywords." She introduces this concept for the first time on response, stating, "[k]eyword advertising allows companies to select, for each of their ads, 'keywords' that will cause those ads to appear on search results. Yahoo! sells 'keyword' advertising." (Doc. 23 at 22.) Worse, from her general discussion of such advertising, Plaintiff then makes the incredible suggestion that, "[a] reasonable inference from the complaint is that Yahoo! has sold the search term 'beverly stayart' as a competitive keyword phrase to companies selling their wares on the Internet." (*Id.* at 23.)[15] This theoretical third-party bidding on "bev stayart" as a "competitive keyword," unalleged in her complaint and which even now Plaintiff refuses to allege affirmatively and instead asks the Court to *infer*, forms the basis for Plaintiff's allegation that Yahoo! uses her name in commerce or advertising. This argument is both procedurally and substantively flawed.

---

*defendant's* goods or services.")(emphasis added)(internal quotation marks omitted); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107(DAB), 2006 WL 2289847, at *11 (S.D.N.Y. Aug. 8, 2006) ("The [plaintiff explicitly] alleges that Defendants have utilized the Thurn und Taxis name…"). *Furst von Thurn* also contradicts Plaintiff's suggestion that she need not assert commercial value in her name, noting that "[s]tanding to assert a § 43(a) claim is limited to a 'purely commercial class' of plaintiffs." *Id.*

[15] Setting aside the irrelevance of this new theory, Plaintiff's complaint also mischaracterizes the Yahoo! sponsored search marketplace. Yahoo! does not "offer for sale" any specific keywords, it permits third-party businesses to bid on keyword phrases they select, and for which they are charged based on clicks the advertisers receive on their ads displayed in responses to searches for those keywords.

First, although the Court must accept well-pled facts as true at the motion to dismiss stage, it certainly need not infer facts that the Plaintiff did not allege, nor conclude that Plaintiff's allegations raised for the first time on response are true or even well-pled. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (indicating that complaint is insufficient "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, the "evidence" Plaintiff attaches to support her theory of potential bids on "bev stayart" as a keyword ─ results from the Compete.com website ─ does not show what Plaintiff claims. The compete.com page merely displays the number of websites that have been visited based on the use of a keyword or keyword phrase (here, "bev stayart"), but says nothing about whether an advertiser bid on that keyword in connection with any search engine, much less Yahoo!.[16]

In fact, Plaintiff's allegations, and especially the supporting documents submitted with her complaint and response, not only fail to show any basis for her contention that advertisers bid on "bev stayart" as a keyword, they actually show the opposite. Plaintiff alleges that keyword advertising causes ads, such as banner ads or sponsored search results, to appear in conjunction with algorithmic search results.[17] Plaintiff's voluminous exhibits, however, do not show a single instance of a search for "bev stayart" or "beverly stayart" generating a banner ad or sponsored search result. Every result alleged or evidenced by Plaintiff as a basis for her claims resides within Yahoo!'s algorithmic search results. (Compl. Exs. C, D, H-O, Q, S, U-W, HH-KK.)

---

[16] In fact, there is no basis to suggest the Compete.com information reflects anything other than the searches for "bev stayart" that Plaintiff herself conducted during the relevant time periods.
[17] Doc. 23 at 22 ("If you search for golf clubs on the Internet, and you get a banner ad about Pepsi that you might drink on the golf course, you have been exposed to a 'keyword' ad. In this example, a soft drink company has 'purchased' the competitive keyword phrase 'golf course' from a search engine.") (emphasis omitted)(footnote call numbers omitted).

Simply put, Plaintiff stops short of alleging, and provides the Court no basis to infer, that a third party advertiser ever bid on "bev stayart" as a "competitive keyword".[18]

> 2. *Yahoo! is not contributorily liable under the Lanham Act, nor does Plaintiff allege such liability in her complaint.*

Plaintiff also attempts to rectify the deficiencies in her Lanham Act claim by introducing a contributory trademark infringement theory for the first time on response, suggesting that even if Yahoo! did not itself use Stayart's name, it should still face contributory liability arising from the third-party websites' alleged false endorsement. Based on her complete failure to plead contributory liability in her complaint, the Court should ignore this argument. *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128-29 (10th Cir. 2003) (indicating pleadings not using term "contributory infringement" failed to adequately allege contributory infringement claim under Lanham Act to satisfy notice pleading requirements).

Even if the Court were to address it, however, the argument fails as a matter of law. The United States Supreme Court has held that an entity may be liable for contributory *trademark* infringement if it intentionally induces a third party to infringe the plaintiff's mark, or if it supplies a product to a third party with actual or constructive knowledge of the product's use to infringe the mark. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982). Setting aside that Plaintiff has explicitly disavowed that she is presenting a trademark infringement claim, in the leading case on contributory trademark liability for online service providers, the Ninth Circuit stated that the key factor to consider is "the extent of control exercised by the defendant over the third party's means of infringement." *Lockheed Martin Corp. v. Network*

---

[18] Moreover, even if Plaintiff could faithfully allege that advertisers bid on "bev stayart" as a keyword for Yahoo! search, her theory that such bidding transforms Yahoo!'s display of search results into a commercial use by *Yahoo!* holds no water. Yahoo! does not choose the phrases advertisers bid on, the advertisers do. As Plaintiff's allegations and exhibits show, these keywords are used to promote the *third-party advertisers'* websites and services, not Yahoo!'s. Thus, while Plaintiff might theoretically have a Lanham Act claim against those advertisers, it could not fulfill the elements for a Lanham Act claim against Yahoo!.

*Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). "Direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab.*'s 'supplies a product' requirement for contributory infringement." *Id.*

In this case, Plaintiff does not allege, because she cannot, that Yahoo! exerts control over the third party websites on which the alleged infringement takes place. The links to those websites, along with limited text from those sites, appear in Yahoo!'s search results based on an automated process. In short, contributory infringement is not possible here. *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 913-14 (N.D. Ill. 2004) (defendant that exerted no control over allegedly infringing third-party website cannot be held contributorily liable).[19]

> **B.  Plaintiff Fails to Address *Wisconsin's* Requirement that Her Name Must Have Commercial Value to Sustain a Right of Publicity Claim.**

In its motion, Yahoo! noted that Plaintiff failed to allege that her name had the requisite commercial value to state a right of publicity claim under Wisconsin law. In the absence of any relevant case law support, Plaintiff's response again resorts to dismissive sarcasm and reference to unrelated third-party claims against Yahoo! (by actual celebrities), and finally, offers one argument addressing whether Stayart's lack of commercial value in her name precludes her claim. Notably, that argument relies on *Illinois'* right of publicity statute, which contains an explicit provision stating that it applies "'regardless of whether the identity of that individual has been used for a commercial purpose during the individual's lifetime.'" Doc. 23 at 29 (quoting *Villalovos v. Sundance Assocs.*, No. 01 C 8468, 2003 WL 115243, at 5 (N.D. Ill. Jan. 13, 2003).

---

[19] Here again, Plaintiff cites a number of cases that lend no support to her argument. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir. 1999) (recognizing there is no contributory liability where defendant "cannot reasonably be expected to monitor the Internet") (internal quotation marks omitted); *Playboy Enters., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171 (N.D. Tex. 1997) (applying copyright contributory liability, a different standard); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) (applying copyright vicarious liability where Stayart does not even allege vicarious infringement), *aff'd* 242 Fed. Appx. 833 (3d Cir. 2007); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992) (applying contributory liability theory in an offline context).

Wisconsin's statute, and its common law equivalent, contain no such carve out. On the contrary, in the seminal Wisconsin right of publicity case involving football legend Elroy "Crazy Legs" Hirsch, the court relied on the plaintiff's prior compensation for use of his name as establishing the required commercial value. *Hirsch*, 90 Wis. 2d at 397.[20] Indeed, the precedent on which the court bases its decision to recognize a right of publicity claim is replete with references to the value of "celebrity" names and likenesses.[21] Wisconsin, like the Restatement on which it is modeled,[22] and unlike the Illinois law on which Plaintiff relies in her response, requires Plaintiff to allege commercial value in her name. She has not, and her claim must fail.

## CONCLUSION

For the foregoing reasons, and for the reasons detailed in its previous Memorandum of Law, Yahoo! respectfully requests that this Court grant Yahoo! judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) for Counts I, II, III, IV, V, and VI of Plaintiff's complaint, or alternatively, that the Court dismiss the aforementioned Counts with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

---

[20] Incredibly, Plaintiff's response to Various' motion cites both *Hirsch* and the Nimmer article discussed therein for the proposition that "all individuals have legitimate proprietary claims in their publicity interests." Doc 21 at 5 (emphasis in original). *Hirsch* says no such thing, and in fact cites the same Nimmer article's discussion of the unique commercial value celebrities retain in their names. *Hirsch*, 90 Wisc. 2d at 390; *see also* n. 21 *supra*.

[21] *See Hirsch*, 90 Wis. 2d at 384 ("It is undisputed that Elroy Hirsch is a sports figure of national prominence"); at 389 ("'[t]his concept of appropriation sought to prevent use of a celebrity's personality without consent'")(quoting Endejan, *The Tort of Misappropriation of Name of Likeness Under Wisconsin's New Privacy Law*, 1978 Wisc. L. Rev. 1029, 1030); *id*. 390 ("'Well known personalities connected with [entertainment and sports]' … concern is rather with publicity…'")(quoting Melville B. Nimmer, *The Right of Publicity*, 19 Law and Contemporary Problems 203 (1954)); *id*. 391 ("'Since the primary advertising value of a celebrity's personality was created through the work and sacrifice of the celebrity, that value could constitute an interest that the law should protect'")(quoting Treece, *Commercial Exploitation of Names, Likenesses, and Personal Histories*, 51 Tex. L. Rev. 637, 646-47 (1973).

[22] Restatement (Second) Of Torts § 652C, cmt. c (1977); *see also* Doc. 15 at 17.

Dated: June 5, 2009  Respectfully submitted,


                              By:   /s/ Christian S. Genetski
                                    Attorney for Defendants Yahoo! Inc. and
                                    Overture Services, Inc.

Christian S. Genetski
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street NW, Suite 600, East Tower
Washington, DC 20005
202.408.6400
202.408.6399 (Facsimile)
Email: cgenetski@sonnenschein.com

David Tonisson
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
312.876.8000
312.876.7934 (Facsimile)
Email: dtonisson@sonnenschein.com